**ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026**

**No. 26-5009**

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

MARK S. ZAID,
Plaintiff-Appellee,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al.,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia, Case No. 1:25-cv-01365-AHA

## REPLY BRIEF FOR APPELLANTS

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

ABHISHEK KAMBLI
*Deputy Associate Attorney
General
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 514-6993
abhishek.kambli@usdoj.gov*

*Counsel for Defendants-Appellants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...................................................... 1

ARGUMENT ........................................................................ 4

I.   Plaintiff's claims challenging the revocation of his
     security clearance are not justiciable ............................. 4

     A.   Plaintiff's claims challenge the merits of a
          clearance determination, not a method,
          policy, or process ........................................... 4

     B.   Plaintiff's other attempts to avoid *Egan* and
          *Lee* also fail............................................... 16

II.  Even if the claims are justiciable, the district court
     erred by granting the preliminary injunction ...................... 22

     A. Plaintiff's retaliation claim
        is not likely to succeed on the merits........................ 23

     B. Plaintiff's due-process claim
        is not likely to succeed on the merits........................ 26

     C. Plaintiff's right-to-counsel claim
        is not likely to succeed on the merits........................ 29

     D. The balance of the equities weighs heavily
        against a preliminary injunction ............................. 31

CONCLUSION ...................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Adams v. Laird,*
  420 F.2d 230 (D.C. Cir. 1969), *cert. denied,*
  397 U.S. 1039 (1970) ...............................................................21

*Board of Regents of State Colls. v. Roth,*
  408 U.S. 564 (1972) .................................................................14

*Carlucci v. Doe,*
  488 U.S. 93 (1988) ...................................................................21

*Committee on Ways & Means, U.S. House of Representatives v.*
  *U.S. Dep't of the Treasury,*
  45 F.4th 324 (D.C. Cir. 2022) ...............................................24

*Conn v. Gabbert,*
  526 U.S. 286 (1999) .................................................................28

*Dent v. West Virginia,*
  129 U.S. 114 (1889) .................................................................28

*Department of the Navy v. Egan,*
  484 U.S. 518 (1988) ..............................1, 12, 13, 16, 18, 19, 21, 29, 31

*Doe v. Cheney,*
  885 F.2d 898 (D.C. Cir. 1989) ...............................................15

*Dorfmont v. Brown,*
  913 F.2d 1399 (9th Cir. 1990) ................................... 14, 27, 28

*El-Ganayni v. Department of Energy,*
  591 F.3d 176 (3d Cir. 2010) ...................................................14

*Gill v. DOJ,*
  875 F.3d 677 (D.C. Cir. 2017) ...............................................27

ii

*Greene v. McElroy,*
   360 U.S. 474 (1959) ....................................................................15

*Haig v. Agee,*
   453 U.S. 280 (1981) ....................................................................19

*Hill v. Department of Air Force,*
   844 F.2d 1407 (10th Cir. 1988) ..................................................14

*Jamil v. Secretary, Dep't of Def.,*
   910 F.2d 1203 (4th Cir. 1990) ....................................................14

*Jones v. Department of the Navy,*
   978 F.2d 1223 (Fed. Cir. 1992) ..................................................14

*Kartseva v. Department of State,*
   37 F.3d 1524 (D.C. Cir. 1994) ....................................................14

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ....................................................................23

*Kruise v. Jorgensen,*
   No. 77-7143, 2023 WL 3476628 (D.C. Cir. May 16, 2023) .................19

*Lee v. Garland,*
   120 F.4th 880 (D.C. Cir. 2024)..............1, 5, 6–7, 8, 9, 13, 15, 24, 26, 27

*Legal Servs. Corp. v. Velazquez,*
   531 U.S. 533 (2001) ....................................................................31

*Marbury v. Madison,*
   5 U.S. (1 Cranch) 137 (1803).................................................. 17–18

*Molerio v. FBI,*
   749 F.2d 815 (D.C. Cir. 1984) .............................................. 12, 16

*National Fed'n of Fed. Emps. v. Greenberg,*
   983 F.2d 286 (D.C. Cir. 1993) .................................... 5, 6, 7, 8, 9, 15

*Olim v. Wakinekona*,
461 U.S. 238 (1983) ................................................................13

*Palmieri v. United States*:
72 F. Supp. 3d 191 (D.D.C. 2014) .......................................28
896 F.3d 579 (D.C. Cir. 2018) ..................................26–27

*Ralls Corp. v. CFIUS*,
758 F.3d 296 (D.C. Cir. 2014) ...........................................15

*Ralpho v. Bell*,
569 F.2d 607 (D.C. Cir. 1977) ............................................15

*Rattigan v. Holder*,
689 F.3d 764 (D.C. Cir. 2012) .................................. 16–17, 19

*Ryan v. Reno*,
168 F.3d 520 (D.C. Cir. 1999) .................................. 13, 24, 27

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) .............................................................17

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025) ...........................................................24–25

*Trump v. Hawaii*,
585 U.S. 667 (2018) .............................................................23

*United States v. Nixon*,
418 U.S. 683 (1974) ..............................................................19

*U.S. Dep't of Labor v. Triplett*,
494 U.S. 715 (1990) ..............................................................30

*Weber v. Burkuhl*,
72 F.3d 134 (8th Cir. 1995) .................................................14

*Wilmer Cutler Pickering Hale & Dorr LLP v. Executive
   Off. of the President,*
   784 F. Supp. 3d 127 (D.D.C. 2025) .............................................5, 13, 20

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..............................................................................22

**U.S. Constitution:**

Art. II, § 1, cl. 1 .................................................................................. 17

Art. II, § 2 .......................................................................................... 1, 18

Art. II, § 3 .......................................................................................... 17

## INTRODUCTION AND SUMMARY

On November 5, 2024, not one American cast his ballot for Plaintiff Mark Zaid. Meanwhile, over 77 million Americans voted to elect Donald J. Trump as the 47th President of the United States. In so doing, "We, the People," singularly vested in President Trump, as Commander in Chief, the authority to classify and control access to information bearing on national security. *See Department of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (citing U.S. Const. art. II, § 2). Exercising this prerogative, President Trump "determined that it is no longer in the national interest" for Plaintiff to continue to have access to classified information. JA85. And as this Court recently recognized, claims challenging such determinations—including constitutional claims—are not justiciable because "there are no manageable standards to support judicial review of clearance decisions." *Lee v. Garland*, 120 F.4th 880, 891 (D.C. Cir. 2024). Plaintiff's public protestations to the contrary do not change this constitutional equation.

Plaintiff's response brief does not contest the basic principle that claims challenging security clearance determinations are barred under *Egan*. Instead, Plaintiff contends that he has brought a different type of

1

claim: a challenge to what he describes as a "policy" under which he was deprived of "an individualized national security assessment." Resp. Br. 17. But this attempt to circumvent *Egan* fails on multiple grounds. Most importantly, it is inconsistent with the claims that plaintiff actually brought, which squarely attack the substance of the President's decision to revoke his access to classified information. Plaintiff seeks the restoration of his security clearance, and in granting that relief, the district court directly overruled the President's determination that Plaintiff's continued access to classified information was no longer in the national interest. No matter what "procedural" label Plaintiff may now try to put on his claims, they are fundamentally a challenge to the merits of a security determination made directly by the President and thus barred under *Egan* and *Lee*.

None of Plaintiffs' other arguments fares any better. Plaintiff argues, for example, that the Government conceded on appeal that it "has not conducted any individualized assessment of Zaid's eligibility for security clearance." Resp. Br. 1 (internal quotations omitted). That is not correct (and an individualized assessment is not required). The Presidential Memorandum is a specific determination that Plaintiff's

continued access to classified information is no longer in the national interest, and nothing more was required. Plaintiff's contention that the Government had to do more to justify this conclusion is a direct attack on the merits of that determination. And Plaintiff's complaint that the Presidential Memorandum deprived agencies "of the necessary discretion to render a security clearance determination," Resp. Br. 27, misses the critical point that the President, not lower-level agency officials, is the ultimate arbiter of access to classified information. Nor does it make any difference that the Presidential Memorandum uses the term "national interest" rather than "national security," as those terms can be used interchangeably and there can be no doubt that the President made a determination that Plaintiff's continued access to classified information was not appropriate. Under *Egan* and *Lee*, Plaintiff's claims challenging that determination are not justiciable.

The Court should begin and end on justiciability without reaching the merits. But on the merits, Plaintiff fares no better. On First Amendment retaliation, he cannot demonstrate that the Presidential Memorandum, which demonstrates a facially nonretaliatory motive, was done *solely* to retaliate against his protected speech. Plaintiff also cannot

3

demonstrate a liberty interest in a security clearance to support a due-process claim nor can he latch onto alleged impacts on his career as a substitute. Opn Fifth Amendment due process, Plaintiff effectively concedes that his clients are not prevented from seeking alternate counsel and cannot point to a single case where a Fifth Amendment right to counsel is implicated by choice of counsel. Finally, the balance of equities tips sharply in favor of the Defendants.

## ARGUMENT

## I.  Plaintiff's claims challenging the revocation of his security clearance are not justiciable.

### A.  Plaintiff's claims challenge the merits of a clearance determination, not a method, policy, or process.

1.  The Presidential Memorandum is a security-clearance determination made by the President. Its title makes clear that it is a decision to "rescind[] security clearances" applicable to "specified individuals," JA85 (capitalization modified), and it explicitly provides that the President has "*determined* that it is no longer in the national interest for the following individuals to access classified information," including Plaintiff, *id.* (emphasis added). It does not purport to establish new policies, procedures, rules of general applicability, or anything of the

4

sort.  Nor does it purport to apply beyond the described individuals for whom the President has already made his "national interest"-based assessment, which is the exact type of assessment that courts lack manageable standards to review.

Nonetheless, Plaintiff attempts to sidestep *Egan*'s and *Lee*'s bar on judicial review of clearance determinations by arguing that the Presidential Memorandum is hardly a clearance determination at all. Resp. Br. 26.  The district court labored to agree, reasoning that Plaintiff's claims "go only to the 'methods used' to revoke his clearance," JA312 (quoting *National Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993)), and that any purported "procedural harm exists 'regardless of how the government might have resolved any particular application," *id.* (quoting *Lee v. Garland*, 120 F.4th 880, 893 (D.C. Cir. 2024); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 149 (D.D.C. 2025)).  Both Plaintiff's and the district court's conclusions rely on a flawed reading of *Greenberg* that is at odds with not only *Greenberg* itself, but also this Circuit's interpretation of it in *Lee*.

*Greenberg* goes no further than tolerating judicial review of methods used generally in security clearance investigations, based on claims and injuries *separate and independent* from the denial of the clearance. *Contra* Resp. Br. 17. The methods at issue in that case were questions on a form that the Department of Defense asked its clearance-holding civilian employees to answer as part of a broad reinvestigation motivated by a series of "highly publicized spy scandals." *Greenberg*, 983 F.2d at 287. The employees challenged those questions on the grounds that they violated their right against self-incrimination and right to privacy, wholly apart from whether their clearances were denied. *Id.* at 288. What the plaintiffs did not do is claim that the questions tainted the denial of their clearances or ask for a restoration of their security clearances. This Circuit permitted the district court's review of *those* questions, explaining that the "substantive issues before us relate to the constitutionality of the *methods used to gather information* on which such judgments presumably will be based." *Id.* at 290 (emphasis added). What it did not do is restore anyone's security clearance after it was revoked. Instead, *Greenberg* makes an uncontroversial point that a dispute does not become nonjusticiable "simply because it tangentially

6

relates to a security clearance." *Lee*, 120 F.4th at 892 (discussing *Greenberg*, 983 F.2d at 286).

Whatever questions *Greenberg* left unanswered, this Circuit answered definitively in *Lee*. There, this Circuit explained that *Greenberg* was cabined to information-gathering methods. *Id.* (quoting *Greenberg*, 983 F.2d at 290). It reasoned that review of such methods were appropriate because the plaintiffs' "alleged injuries—the compelled disclosure of incriminating or private facts—[] existed regardless of how the government might have resolved any particular [clearance] application." *Id.* at 893 (citing *Greenberg*, 983 F.2d at 291–95). It then emphasized that "the *Greenberg* plaintiffs did not seek review of 'discretionary judgments' regarding the merits of 'any particular employee's security clearance.'" *Id.* (quoting *Greenberg*, 983 F.2d at 290).

Here, *Lee* forecloses Plaintiff's and the district court's broad reading of *Greenberg*. Plaintiff does not challenge a "method" in any real sense like the questionnaire, searches, or drug tests described in *Greenberg*— each of which can injure a plaintiff in its own right separate from any clearance determination. Here, by contrast, Plaintiff's alleged injuries— including any "procedural harm" based on an agency's reliance on the

7

President's clearance determination—depend entirely on the revocation of his clearance. His First Amendment claim depends on his "access to classified information" and the "summary revocation of [his] security clearance," JA 33–34; his Fifth Amendment due-process claim hinges on his assertion that he was "summarily denied a security clearance in a way that impairs his livelihood," JA32; and his Fifth Amendment right-to-counsel claim turns on whether he will "functionally unable to carry out his duties as an attorney for his clients whose representations require classified access. JA36. Each claim, on its own terms, alleges injuries that exist solely because of the clearance revocation. *Lee* flatly bars them. 120 F.4th at 893 (citing *Greenberg*, 983 F.2d at 291–95).

And, if it were not transparent enough that Plaintiff's claims are bound up in the clearance determination itself, his requested relief settles any doubt. He asks the district court to, among other things, "[r]escind the Defendants' revocation of [his] security clearance[,]" "[d]eclare" the Presidential Memorandum unconstitutional, and "[e]njoin" its implementation. JA39. These requests are a far cry from the *Greenberg* plaintiffs' requested remedies, which entailed merely "prospective relief barring use of the questions," *Lee*, 120 F.4th at 892–

93 (citing *Greenberg*, 983 F.2d at 287–88). Instead, Plaintiff's requested remedies are like those sought by the *Lee* plaintiff, which "flowed inexorably from the revocation decision" and did not target "an agency decision discrete from" it. *Id.* at 894 (citation omitted).

Therefore, *Greenberg* does not provide the proper framework to resolve this appeal. *Contra* Resp. Br. 21. On its own terms and as interpreted by *Lee*, *Greenberg* goes no further than permitting the review of claims targeting investigatory methods that may be challenged outside the context of a specific clearance determination. The Presidential Memorandum is not such a method, and it does not prescribe one.

2. Plaintiff cannot escape *Lee* by casting his claims as attacks on an "overarching policy" rather than a clearance decision. Resp. Br. 22–23. Although he repeatedly calls the Presidential Memorandum a "policy," he never defines that term. The Presidential Memorandum is a clearance determination, not a policy of the sort at issue in *Greenberg*. It says, plainly, that the President has "*determined* that it is no longer in the national interest for the [listed] individuals to access classified information." JA85 (emphasis added). It reflects the President's completed assessment based on the national interest and does not

9

prescribe any standard course of action. Instead, it is confined by its own terms to a list of individuals named in one sentence, does not create any generally applicable rules, and has no effect whatsoever on agencies' standard operating procedures. It is certainly not a policy of the sort at issue in *Greenberg* further underscoring Plaintiff's desire to challenge the security clearance determination on the merits.

Plaintiff goes a step further, calling the Presidential Memorandum a "policy prescribing inputs in the security clearance process." Resp. Br. 22. But he does not identify those "inputs," nor could he. The Presidential Memorandum does not prescribe any inputs like security-related questions or direct searches, drug tests, or any other means. Instead, it reflects the President's determination that Plaintiff should not have a security clearance based on the President's assessment of the "national interest." JA85.

It is difficult to imagine any clearance determination that would not be swept in by Plaintiff's vague use of the term "policy." Although Plaintiff never explains why he sees the Presidential Memorandum as a "policy," he hints that it should be considered one because it directs agencies to implement the President's revocation decision. *See* Resp. Br.

22 (mentioning agency interpretation). But any presidential clearance determination would do the same, and allowing plaintiffs to reframe every clearance determination as a "policy" would render *Egan* and *Lee* dead letter.

Nor can Plaintiff resuscitate his argument by saying that the Presidential Memorandum is "sprawling" and a "blanket policy" rather than an "individualized" determination, intimating that it might work out differently if the Presidential Memorandum had mentioned only Plaintiff and not the other fourteen named individuals. Resp. Br. 22. For one, he cites no authority for the proposition that a clearance decision must be "individualized," and that term appears nowhere in *Egan*, *Lee*, or *Greenberg*. But even if it did, the Presidential Memorandum easily meets the bar because it lists Plaintiff by name and states that the President has "determined that it is no longer in the national interest for the [listed] individuals to access classified information." JA85. It would be wholly arbitrary to draw the line for an "individualized determination" somewhere between one person and the number of people named in the Presidential Memorandum. And the Presidential Memorandum, on its own terms, does not identify any common "policy" or rule connecting the

11

named individuals. Plaintiff's claim that the Presidential Memorandum supposedly targets "political enemies," Resp. Br. 22–23, is flawed because it requires second-guessing the President's motives, which *Egan* specifically prohibits.

And Plaintiff is not entitled to see the President's "individualized findings" or anything of the sort. *Contra* Resp. Br. at 22–23. Such a standard is nowhere to be found in the case law. On the contrary, *Egan* provides that the Executive Branch may deny clearances "on unspecified grounds." 484 U.S. at 529 ("[T]o be denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic." (alteration in original) (quoting *Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984))). It would be unprecedented to require the President to divulge more than the facially reasonable justification than he did here.

3. Finally, Plaintiff cannot circumvent *Lee* by calling his claims "procedural." *Contra* Resp. Br. 23. *Lee* creates no such loophole. When it discusses due process, it does not distinguish procedural and substantive due-process claims. And it makes little sense to interpret this Circuit's use of the term "due process" in its past cases as referring

12

to the atextual doctrine of substantive due process instead of the Fifth Amendment's core procedural protections.

This Court should reject Plaintiff's attempt to "circumvent *Egan* by characterizing" his actions "as procedural, divorced from any substantive security determination." *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) (holding that the challenged employment actions were nonjusticiable under Title VII); *accord Lee*, 120 F.4th at 887 (rejecting the plaintiff's "attempts to circumvent *Egan* by framing his Title VII claims as challenging only the" underlying methods, "not the revocation decision itself"); *id.* (extending *Ryan* to bar constitutional claims).

The district court erred in concluding that Plaintiff suffered "procedural harm [that] exists 'regardless of how the government might have resolved any particular application.'" JA312 (quoting *Lee*, 120 F.4th at 893; *Wilmer*, 784 F. Supp. 3d at 149). Whatever "procedural harm" Plaintiff alleges necessarily exists only because of his clearance revocation. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (citation omitted). Plaintiff does not have a liberty interest in a security

13

clearance.[1] *Contra* JA320. But even if he did, any procedural due-process claim would necessarily turn on its deprivation. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). In other words, Plaintiff has not and cannot state a procedural due-process claim that does not turn on the clearance decision itself.

The district court opinion reveals as much. It accepts Plaintiff's argument that "the government's summary revocation of his clearance deprived him of a liberty interest," JA320 (citation omitted), and explains that "[t]he D.C. Circuit has held that a liberty interest is implicated where government action changes a plaintiff's status[,]" *id.* (citing *Kartseva v. Department of State*, 37 F.3d 1524, 1527–28 (D.C. Cir. 1994);

---

[1] *Hill v. Department of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988) (holding that an individual "does not have a constitutional . . . liberty interest in his security clearance"); *see also Jones v. Department of the Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992) (holding that "no employee has a . . . 'liberty' interest in a security clearance or access to classified information); *Jamil v. Secretary, Department of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990) ("It follows that the revocation does not infringe upon one's . . . liberty interests."); *El-Ganayni v. Department of Energy*, 591 F.3d 176, 187 n.6 (3d Cir. 2010) ("No one, including [claimant], has a right to a security clearance . . . ." (internal citations omitted)); *Weber v. Burkuhl*, 72 F.3d 134 (8th Cir. 1995) (same); *Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990) ("There is no right to maintain a security clearance . . . .").

*Greene v. McElroy*, 360 U.S. 474, 492 (1959)).  It even adds that to "show a deprivation if this type of liberty interest, a plaintiff must show the government 'both altered his status and stigmatized his reputation.'" JA320 (quoting *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989)).  This "change in status" is the change in his clearance status or, at the very least, contingent on it.  *Lee* thus renders claims about it nonjusticiable.

Plaintiff's reliance on *Ralls* and *Ralpho* is inapposite.  Resp. Br. 18 (quoting *Ralls Corp. v. CFIUS*, 758 F.3d 296, 311 (D.C. Cir. 2014); *Ralpho v. Bell*, 569 F.2d 607, 620–22 (D.C. Cir. 1977)).  As Plaintiff admits, those cases have nothing to do with clearance determinations.  Resp. Br. 18 (admitting that those cases arise "outside the context of security clearances").  This concession is fatal.  *Lee* controls in the security-clearance context, barring the review of claims that hinge on the outcome of a clearance resolution.  120 F.4th at 893 (citing *Greenberg*, 983 F.2d at 291–95).  And *Ralls* and *Ralpho* are about whether the plaintiffs were entitled to see and rebut the evidence when their cognizable property interests were at stake.  *Ralls*, 758 F.3d at 315 (property interest in windfarm project); *Ralpho*, 569 F.2d at 628–29 (property interest in claim for destroyed home under Micronesian Claims Act).  This principle

15

cannot be extended to the clearance context.  *Egan* itself approves denying clearances "on unspecified grounds," 484 U.S. at 528–29 (quoting *Molerio*, 749 F.2d at 824), and concludes that individuals have no right to a clearance, *id.*

### B.    Plaintiff's other attempts to avoid *Egan* and *Lee* also fail.

Because *Egan* and *Lee* so squarely bar review of claims like Plaintiff's, he is forced to try to distinguish the Presidential Memorandum on wholly irrelevant factual grounds: namely, that the Presidential Memorandum (1) contains a determination made by the President rather than an agency expert and (2) the determination uses the term "national interest" instead of "national security."  Resp. Br. 22, 26–27.  These purported distinctions are frivolous.

1.  First, Plaintiff's attempt to sidestep *Egan* and *Lee* by arguing that "experts" and agencies are entitled to greater deference than the President himself when exercising *his* core Article II power is fundamentally misguided.  Resp. Br. 17, 26.  In doing so, Plaintiff concedes that "courts cannot second guess the substance of an agency expert's individualized, predictive judgment that the revocation of a particular security clearance is necessary for the national security."

16

Resp. Br. 17 (quoting *Rattigan v. Holder*, 689 F.3d 764, 767 (D.C. Cir. 2012)). But he errs in suggesting that this "absolute bar on judicial review" applies only to decisions "made by trained Security Division personnel"—*i.e.*, the President's subordinates—but not those made by the President himself. *Id.* at 27 (quoting *Rattigan*, 689 F.3d at 768).

Executive Branch agencies and employees cannot exercise discretionary Executive Power beyond what the President has delegated to them. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020) ("[T]he 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3)). Under the Constitution, "the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 166 (1803). He may "appoint certain officers, who act by his authority and in conformity with his orders," to "aid him in the performance of these duties." *Id.* But when he does, "their acts are his acts; and whatever opinion may be entertained

17

of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion." *Id.*

The Constitution singularly vests responsibility over clearance determinations in the President as Commander in Chief. *Egan*, 484 U.S. at 527 (quoting U.S. Const. art. II, § 2). It does not vest any of this responsibility directly in agencies or experts. Accordingly, Presidents have, by executive order, delegated the responsibility to make clearance determinations to some Executive Branch agencies. *Id.* (citing several executive orders). In turn, those agencies' discretion over clearance determinations can be no greater than the President's itself.

Instead of accepting Plaintiff's upside-down theory of executive power, this Court should take *Egan* at face value. That case concludes that the "authority to protect [national security] information falls on the President." *Egan*, 484 U.S. at 527. Like the Constitution itself, it does not place this extraordinary responsibility on agencies or "national security experts" as Plaintiff would have this Court hold. Nor does it lend credence to Plaintiff's theory that the Commander in Chief is not a national security expert himself. Contrarily, *Egan* points out that the Supreme Court has "recognized 'the generally accepted view that foreign

policy [is] the province and responsibility of the Executive,'" *id.* (quoting *Haig v. Agee*, 453 U.S. 280, 293–94 (1981)), and that as "to these areas of Art. II duties the courts have traditionally shown the utmost deference to *Presidential* responsibilities," *id.* at 529–30 (emphasis added) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

*Rattigan* does not strip the President of his authority over security-clearance determinations.  That case concerned no more than whether certain FBI agents were appropriately trained to submit security-related reports and referrals that might be used in employment decisions. *Rattigan*, 689 F.3d at 766.  It concluded that *Egan* "does not preclude review of employment decisions made by officials who are not ultimately responsible for clearance determinations." *Kruise v. Jorgensen*, No. 22-7143, 2023 WL 3476628, at \*1 (D.C. Cir. May 16, 2023) (citing *Rattigan*, 689 F.3d 764).  But it did not open the door to judicial review of clearance determinations themselves, nor does it support the proposition that the President is entitled to less deference than an agency official.

No matter how he tries to frame his claim, Plaintiff is in court because the Presidential Memorandum revoked his security clearance

19

and he wants it back. This is nonjusticiable and the court can end its inquiry.

2. Second, Plaintiff's argument that the "national interest" does not encompass "national security" is both wrong and a red herring. Resp. Br. 28 (quoting *Wilmer*, 784 F. Supp. 3d at 149). The district court erred in adopting it, expecting the Presidential Memorandum to "define 'national interest,'" JA335 (citations omitted), and reasoning that the "invocation of the phrase 'national interest' . . . does not implicate the separation of powers concerns present when the executive branch has exercised its expertise to make an individualized national security assessment." JA314 (citations omitted). The "national interest" plainly includes national-security interests, and in the context of clearance determinations, the terms are interchangeable.

The Presidential Memorandum uses the term "national interest" in the exact same way as the Executive Orders of Presidents Eisenhower, Bush, and Obama—each of which is cited by Plaintiff and the district court. JA332 (citing Exec. Orders 10,865, 12,968, and 13,467). As an example, Executive Order 10,865 provides that the clearance process is necessary "to protect the *national interest*" and explains that an applicant

20

should be given access to classified information "only upon a finding that it is clearly consistent with the *national interest* to do so." JA101 (emphasis added).

Even more, the Supreme Court and this Court have long understood the term "national interest" to include national-security interests in the context of clearance determinations. *E.g., Carlucci v. Doe*, 488 U.S. 93, 95 (1988); *Adams v. Laird*, 420 F.2d 230, 238–39 (D.C. Cir. 1969), *cert. denied*, 397 U.S. 1039 (1970). This Circuit has recognized and approved the "standard . . . that classified information is to be made accessible to an applicant 'only upon a finding that it is clearly consistent with the national interest to do so'" and explained that this standard is not "lacking in a particularized enunciation adequate to satisfy due process elements of notice and rationality." *Adams*, 420 F.2d at 238–39; *see also Egan*, 484 U.S. at 529 (quoting *Adams*, 420 F.2d at 239).

The district court erred in finding that the Presidential Memorandum does not reflect a national-security assessment. Resp. Br. 12. The term "national interest" is not "distinct from and more nebulous than a particular determination about national security," *id.* (citation omitted), especially in the context of a clearance decision. And courts

may not dodge *Egan* and *Lee* to review a clearance determination just because the Executive Branch did not utter the magic words "national security."

## II.    Even if the claims are justiciable, the district court erred by granting the preliminary injunction.

Plaintiff's response demonstrates not only his weaknesses on justiciability but also the merits.  His claims fail because (1) he cannot succeed on a First Amendment retaliation claim when the Presidential Memorandum contains a facially nonretaliatory motive (especially in the security clearance context), (2) he cannot succeed on a procedural due process claim when no one has a liberty interest in a security clearance and it does not prevent him from engaging in his chosen profession, and (3) Plaintiff's claim about his clients being deprived of their choice of counsel has no support in any precedent on Fifth Amendment right to counsel.

And Plaintiff must do far more than establish likelihood of success on the merits.  Given the injunction's national-security implications, the district court very likely abused its discretion even if it properly accepted Plaintiff's merits argument.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 31 n.5 (2008) (holding that preliminary injunction was an

22

abuse of discretion even though "plaintiffs are correct on the underlying merits").

### A.    Plaintiff's retaliation claim is not likely to succeed on the merits.

The district court erred when it held that Plaintiff was likely to succeed on his First Amendment claim. JA316–17. To reach that conclusion, the district court had to ignore the President's facially legitimate and bona fide reason for revoking Plaintiff's clearance, *i.e.*, that it is "no longer in the national interest" for him "to access classified information." JA85; *cf. Trump v. Hawaii,* 585 U.S. 667, 703 (2018) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)) (explaining that when the Executive exercises its power over immigration "'on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification' against the asserted constitutional interests of U.S. citizens"). It then had to speculate as to the President's and Defendants' true motives, reasoning that the Presidential Memorandum's invocation of the "national interest . . . to access classified information," JA85, was insufficient because it lacked "any mention of concerns related to protecting classified information," JA319—all while citing executive

orders by Presidents Eisenhower, Bush, and Obama that use "national interest" in the same way as President Trump's Memorandum, *supra* I.C. Plaintiff effectively asks this Court to condone the district court's looking behind the President's "national interest"-based justification to ask "precisely the question that *Ryan* [and *Lee*] held off-limits": "What was [the Government's] motivation?" *Lee*, 120 F.4th at 893 (quoting *Ryan*, 168 F.3d at 524). This goes back to why this issue was not justiciable in the first instance.

Setting aside justiciability, this facially nonretaliatory motive noted on the face of the Presidential Memorandum is important because Plaintiff cannot prevail on a First Amendment retaliation claim when the Presidential Memorandum would have been issued absent the retaliatory motive. *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Department of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022). That reason is "sufficient to sustain" the Presidential Memorandum regardless of any other justification. *TikTok Inc. v. Garland*, 604 U.S. 56, 79 (2025) (in putative mixed-motive scenario, where "Congress would have passed the challenged provisions based on

[a valid] justification alone," that "justification [is] sufficient to sustain the challenged provisions"). Such a justification exists in this case.

Plaintiff's countervailing arguments are unavailing. Plaintiff simply restates the district court's erroneous finding that an obvious non-retaliatory ground "appears nowhere in the presidential memorandum . . . *without any mention of concerns related to protecting classified information*." Resp. Br. 32 (quoting JA319) (emphasis added). This finding is unpersuasive because the Presidential Memorandum is explicitly grounded in the "national interest" as it relates to "access[ing] classified information." JA85. This is an obvious non-retaliatory ground.

When attempting to avoid the conclusion that a "national interest"-based justification is nonretaliatory, Plaintiff incorrectly cites the record by asserting that the Government "labeled [him] a threat to the 'national interest.'" Resp. Br. 40 (quoting JA30, JA83, JA95, JA97). That appears nowhere in the Presidential Memorandum, and this Court should reject Plaintiff's invitation to ignore the nonretaliatory ground plainly stated in the Presidential Memorandum.

The President can deny security clearances even on unspecified grounds, and in the Presidential Memorandum, he stated that he no

longer believes it is in the national interests to allow Plaintiff to access classified information. That is sufficient to defeat Plaintiff's First Amendment retaliation claim.

### B.    Plaintiff's due-process claim is not likely to succeed on the merits.

Plaintiff's due-process claim is unlikely to succeed because it rests on: (1) abrogating *Lee* or awkwardly interpreting its use of the term "due process" as limited to "substantive due process"; (2) accepting the novel conclusion that individuals have a liberty interest in a clearance; and (3) remarkably broadening the right to a "chosen career."

First, *Lee* squarely prohibited a due-process claim aimed at a clearance determination. 120 F.4th at 894. It does not make sense to distinguish *Lee* by interpreting this Circuit's use of the term "due process" as meaning only "substantive due process"; accepting this reading would call into question the meaning of the term in many of this Circuit's past decisions. And *Lee* was intended to address procedural due-process claims. In *Palmieri v. United States*, Judge Katsas recognized the "question whether a plaintiff can seek to undo the denial or revocation of a security clearance, based on non-frivolous constitutional challenges to investigatory or even adjudicatory process." 896 F.3d 579, 590 (D.C.

26

Cir. 2018) (Katsas, J., concurring); *see Lee*, 120 F.4th at 887 (citing *Ryan*, 168 F.3d at 524; *Palmieri*, 896 F.3d at 590 (Katsas, J., concurring)). *Lee* answered that question.

Second, Plaintiff does not demonstrate that individuals have a liberty interest in a clearance. No circuit has held that an individual has a liberty interest in a clearance, *see supra* note 1, and affirming the injunction would require taking a position contrary to any other circuit to consider the issue. *See* Resp. Br. 37 ("[T]he Ninth Circuit . . . has held 'there is no liberty interest in employment requiring [a security] clearance.'" (quoting *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990))). And Plaintiff's argument that the Ninth Circuit's "contradicts this Court's precedent" is wrong. *Id. Palmieri* explained that this Circuit has not decided whether an individual has a cognizable liberty interest in a clearance. 896 F.3d at 587 (citing *Gill v. DOJ*, 875 F.3d 677, 681 (D.C. Cir. 2017)). It did so after affirming the district court, which relied on the Ninth Circuit's holding in *Dorfmont* and explained that a plaintiff "does not have a liberty . . . interest in his security clearance" and "the right 'to earn a living' does not extend to jobs requiring a security

27

clearance." *Palmieri v. United States*, 72 F. Supp. 3d 191, 207 (D.D.C. 2014) (citing *Dorfmont*, 913 F.2d at 1403–04).

Third, Plaintiff cannot circumvent the bar on clearance determinations by arguing that the liberty interest at stake is actually his interest in a "chosen career." Resp. Br. 36 (quoting JA321). If claims like this were possible, anyone could circumvent *Egan* and *Lee* by couching their claims against clearance determinations grounded in this right. It cannot be the case that individuals have the right to a chosen career that requires access to classified information. In any event, the "right to a chosen career" entails "some generalized due process right to choose one's field of private employment," *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999), not the right to practice a specific kind of law or have specific clients. And even if the Presidential Memorandum touches upon the right to a chosen career, that right is subject to government regulation. *Id.* at 292 (citations omitted). Put another way, "there is no arbitrary deprivation of" the right to pursue one's lawful calling "where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society." *Dent v. State of W. Va.*, 129 U.S. 114, 122 (1889). Here, whatever hypothetical inconvenience

28

Plaintiff might suffer does not come close to the national interest at stake the President's determination.

Finally, Plaintiff's "reputation-plus" argument is without merit. To begin, he improperly relies on statements made by officials that are outside the Presidential Memorandum itself, which simply states that is no longer in the national interest for him to have access to classified information. But even if the district court could rely on extraneous evidence, its conclusion flies in the face of binding precedent. After all, "[t]he grant of a clearance requires an affirmative act of discretion on the part of the granting official" and "[a] clearance does not equate with passing judgment upon an individual's character." *See Egan*, 484 U.S. at 528. Given that the ultimate relief Plaintiff seeks is restoration of his clearance, it is impossible to see how to square Plaintiff's reputation-plus argument with *Egan*.

## C. Plaintiff's right-to-counsel claim is not likely to succeed on the merits.

Plaintiff's right-to-counsel argument is unsupported, contradicts *Egan* and *Lee*, and, if accepted, would lead to absurd consequences. Neither Plaintiff nor the district court cite a single case that entertains a right-to-counsel argument in the context of security clearances. Instead,

29

Plaintiff's argument relies on dicta from cases brought by a state prisoner's ineffective-assistance-of-counsel claim and a criminal defendant's claim that a district court prevented him from choosing his lawyer.  Resp. Br. 42 (citations omitted).  The dicta from these cases cannot be morphed into this context, especially given that the Fifth Amendment right to counsel does not operate in the same manner as the Sixth Amendment right to counsel that Plaintiff does not raise here.

Most importantly though, Plaintiff's claims falter because he does not claim that his clients would be unable to find alternative representation and in fact implicitly concedes as much.  Resp. Br. 44.  In *U.S. Department of Labor v. Triplett*, the court held that an attorney must show "that the regime made attorneys unavailable to his prospective clients." 494 U.S. 715, 722 (1990).  Plaintiff attempts to shift the test into whether his clients are allowed their counsel of choice.  Resp. Br. 44.  Such a standard does not exist in the Fifth Amendment right to

30

counsel context, and this court should reject Plaintiff's invitation to create one.[2]

The Presidential Memorandum does not create "constitutional crises" by revoking Plaintiff's clearance. *Contra* Resp. Br. 42. But accepting Plaintiff's argument would. At best, doing so would give lawyers the unique ability to challenge the Government's clearance denials and revocations. At worst, doing so would grant any potential client a way to challenge clearance decisions that affect lawyers. The court need not enter this territory as binding precedent on Fifth Amendment right to counsel answers this question.

### D.    The balance of the equities weighs heavily against a preliminary injunction.

1. Plaintiff's alleged injuries do not deprive him of his job or his license and ability to practice law. At most, they deprive him of a security clearance and access to classified information, and he obviously has no right to either one. *Egan*, 484 U.S. at 528. As with most of Plaintiff's arguments, his argument here depends on the notion that the

---

[2] Plaintiff's reliance on *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001), is a red herring as that case addressed viewpoint discrimination and not the right to counsel.

Government "disguis[ed] this case as being about 'protecting the Nation's secrets,'" Resp. Br. 49 (quoting Gov't Br. 47), and that "'national security' was never the stated justification for revoking" Plaintiff's clearance, *id.* (quoting Gov't Br. 48). But the conclusion that "national interest" in the clearance context does not include "national security" is wrong. *Supra* Section I.C. The fact that the district court's reasoning is so heavily dependent on this flawed conclusion alone warrants vacating the injunction.

2. The balance of equities and hardships overwhelmingly favors reversing the district court's order. The public and Government are harmed by the district court's intrusion into the President's constitutional authority to make clearance determinations to protect the national interest. This usurpation of the President's authority poses a serious threat not only to national security but also to the constitutional separation of powers.

Plaintiff's argument that Defendants' decision not to seek a stay of the preliminary injunction or revoke Plaintiff's clearance through other means "fatally undercuts" the governmental and public interests at stake is unfounded. *Contra* Resp. Br. 52. The Government's urgency is evident

32

in the fact that it sought expedited briefing, DE #2154112, and Plaintiff himself did not sue for an injunction until nearly two months after the clearance determination. JA329 (finding that a delay in filing does not detract from alleged harms). Plaintiff cannot have it both ways.

## CONCLUSION

The district court's judgment should be reversed.

April 10, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

/s/ *Abhishek Kambli*
ABHISHEK KAMBLI
*Deputy Associate Attorney General*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-6993*
*Abhishek.Kambli@usdoj.gov*

33

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,353 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font.

*/s/ Abhishek S. Kambli*
Abhishek S. Kambli

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ *Abhishek S. Kambli*
Abhishek S. Kambli