**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 26-5009**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

MARK ZAID,
    *Plaintiff-Appellee,*

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al.,
    *Defendant-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLANTS**

———————————

STANLEY E. WOODWARD JR.
  *Associate Attorney General*
ABHISHEK S. KAMBLI
    *Deputy Associate Attorney
    General*
*U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-6993*
Abhishek.kambli@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Defendants-appellants are Executive Office of the President; Central Intelligence Agency; Defense Counterintelligence and Security Agency; Department of Defense; Office of the Director of National Intelligence; United States of America.

Plaintiff-appellee is Mark S. Zaid.

Amici curiae in the district court were Past Presidents of the D.C. Bar; First Amendment Scholars; Government Accountability Project; Law Firm Partners United Inc.; Whistleblower Aid; Aaron H. Caplan.

## B.    Rulings Under Review

The ruling under review was entered in *Zaid v. Executive Office of the President*, No. 1:25-cv-1365-AHA (D.D.C.), by the Honorable Amir H. Ali.  This is the opinion and order dated December 23, 2025, granting in part Plaintiff's Motion for a Preliminary Injunction and denying Defendants' Motion to Dismiss (JA303-341).  The district court's opinion is not yet published but is available at 2025 WL 3724884.

## C.     Related Cases

The following cases are currently pending before the D.C. Circuit:

Perkins Coie LLP v. DOJ, No. 25-5241 (D.C. Cir.); Jenner & Block LLP

v. DOJ, No. 25-5265 (D.C. Cir.); Wilmer Cutler Pickering Hale & Dorr

LLP v. Exec. Off. of the President, No. 25-5277 (D.C. Cir.); Susman

Godfrey LLP v. Exec. Off. of the President, No. 25-5310 (D.C. Cir.).

# TABLE OF CONTENTS

INTRODUCTION.................................................................................... 1

STATEMENT OF JURISDICTION ...................................................... 3

STATEMENT OF THE ISSUES ........................................................... 4

PERTINENT STATUTES AND REGULATIONS................................ 4

STATEMENT OF THE CASE .............................................................. 4

    A.    Statutory and Factual Background ........................................ 4

    B.    Procedural Background .......................................................... 8

SUMMARY OF ARGUMENT ............................................................ 10

STANDARD OF REVIEW .................................................................. 13

ARGUMENT ....................................................................................... 13

I.    Plaintiff's Claims Are Not Justiciable............................................ 13

II.    Even If His Claims Were Justiciable, Plaintiff Is Unlikely To
Succeed On The Merits Of His Claims. ........................................ 32

    A.    The District Court Erred In Concluding That Plaintiff
Was Likely To Succeed On His First Amendment Claim.
..................................................................................... 32

    B.    The District Court Erred In Concluding That Plaintiff
Was Likely To Succeed On His Fifth Amendment Due
Process Claim. .................................................................... 35

    C.    The District Court Erred In Concluding That Plaintiff
Was Likely To Succeed On His Fifth Amendment Right
to Counsel Claim. ............................................................... 43

D.      The Equitable Factors Do Not Support an Injunction............ 47

CONCLUSION.................................................................................................. 54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

*Amgen Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2019) ............................................................. 24

*Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kansas v. Umbehr*,
  518 U.S. 668 (1996) ............................................................................. 35

*Becerra v. Dalton*,
  94 F.3d 145 (4th Cir. 1996) ............................................................. 18, 26

*Bennett v. Chertoff*,
  425 F.3d 999 (D.C. Cir. 2005) ......................................................... 16, 17

*Cafeteria and Restaurant Workers Union, Local 473, AFl-CIO v.
  McElroy*,
  367 U.S. 886 (1961) ......................................................................... 40, 41

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ............................................................. 13

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) ........................................................................... 50, 51

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*,
  48 F.3d 618 (1st Cir. 1995) ................................................................. 53

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019) ............................................................. 24

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) .......... 1, 3, 10, 13, 15, 16, 26, 34, 37, 39, 41, 46, 48

*Dhiab v. Trump*,
  852 F.3d 1087 (D.C. Cir. 2017) ........................................................... 50

*Doe v. Cheney*,
  885 F.2d 898 (D.C. Cir. 1989) ......................................................... 38, 39

*Doe v. U.S. Dep't of Just.*,
  753 F.2d 1092 (D.C. Cir. 1985) ........................................................... 39

v

*Dorfmont v. Brown,*
   913 F.2d 1399 (9th Cir. 1990) ...................................................... 37, 40

*El-Ganayni v. United States Department of Energy,*
   591 F.3d 176 (3d Cir. 2010) ......................................................... 26, 37

*Foote v. Moniz,*
   751 F.3d 656 (D.C. Cir. 2014) ................................... 17, 18, 30-31, 32

*Gargiulo v. Dep't of Homeland Sec.,*
   727 F.3d 1181 (Fed. Cir. 2013) ........................................................ 38

*Gill v. U.S. Dep't of Justice.,*
   875 F.3d 677 (D.C. Cir. 2017) ..................................................... 36, 38

*Glines v. U.S. Dep't of Def.,*
   No. 24-CV-1222, 2025 WL 1207085 (D.D.C. Apr. 25, 2025) ............. 52

*Greene v. McElroy,*
   360 U.S. 474 (1959)........................................................................... 40

*Haig v. Agree,*
   453 U.S. 280 (1981) .......................................................................... 47

*Hamilton v. Transp. Sec. Admin,*
   240 F. Supp. 3d 203 (D.D.C. 2016) .............................................. 48, 52

*Hartman v. Moore,*
   547 U.S. 250 (2006) .......................................................................... 33

*Hill v. White,*
   321 F.3d 1334 (11th Cir. 2003) ........................................................ 18

*Hill v. Department of Air Force,*
   844 F.2d 1407 (10th Cir. 1988).................................................... 36, 37

*Holder v. Humanitarian L. Project,*
   561 U.S. 1 (2010) .............................................................................. 48

*In re United States,*
   1 F.3d 1251 (Fed. Cir. 1993) ............................................................ 46

*Jamil v. Secretary, Dep't of Defense,*
   910 F.2d 1203 (4th Cir. 1990) ................................................. 36-37, 41

*Jones v. Dep't of Navy,*
   978 F.2d 1223 (Fed. Cir. 1992) ............................................. 36, 41, 42

*Kartseva v. Dep't of State,*
   37 F.3d 1524 (D.C. Cir. 1994) ........................................................ 40

*Lee v. Garland,*
   120 F.4th 880 (D.C. Cir. 2024) ................... 2, 10, 13-14, 19, 20, 21, 23,
                                                   24, 25, 32, 33, 34, 35, 39, 41

*Mathews v. Diaz,*
   426 U.S. 67–82 (1976) ........................................................ 48

*Molerio v. FBI,*
   749 F.2d 815 (D.C. Cir. 1984) ........................................................ 41

*Nat'l Fed'n of Fed. Emps. v. Greenberg,*
   983 F.2d 286 (D.C. Cir. 1993) ............................................. 11, 20, 25

*Nieves v. Bartlett,*
   587 U.S. 391 (2019) ........................................................ 33

*Oryszak v. Sullivan,*
   576 F.3d 522 (D.C. Cir. 2009) ........................................................ 17

*Palmieri v. United States,*
   896 F.3d 579 (D.C. Cir. 2018) ..................................................... 2, 19

*Paul v. Davis,*
   424 U.S. 693 (1976) ........................................................ 43

*Pell v. Procunier,*
   417 U.S. 817 (1974) ........................................................ 44

*Perez v. FBI,*
   71 F.3d 513 (5th Cir. 1995) ........................................................ 18

*Ranger v. Tenet,*
   274 F. Supp. 2d 1 (D.D.C. 2003) ..................................................... 40

*Rattigan v. Holder*,
    643 F.3d 975 (D.C. Cir. 2011) ..................................................... 30, 31

*Rattigan v. Holder*,
    689 F.3d 764 (D.C. Cir. 2012) ..................................................... 29, 30

*Rattigan v. Holder*,
    780 F.3d 413 (D.C. Cir. 2015) ........................................................... 30

*Reed v. Goertz*,
    598 U.S. 230 (2023) ............................................................................ 36

*Ryan v. Reno*,
    168 F.3d 520 (D.C. Cir. 1999) ................................... 16, 19, 25, 27, 28

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
    105 F. Supp. 3d 108 (D.D.C. 2015) ................................................... 51

*Snepp v. United States*,
    444 U.S. 507 (1980) ............................................................................ 47

*Steinberg v. Fed. Deposit Ins. Corp.*,
    No. CV 05-15 (RMC), 2005 WL 8178138 (D.D.C. Feb. 9, 2005) ......... 52

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ............................................................................ 48

*United States v. Al-Arian*,
    267 F. Supp. 2d 1258 (M.D. Fla. 2003) ............................................. 45

*United States v. Bin Laden*,
    58 F. Supp. 2d 113 (S.D.N.Y. 1999) ................................................... 45

*United States v. Friedman*,
    849 F.2d 1488 (D.C. Cir. 1988) ......................................................... 43

*United States v. Hashmi*,
    621 F. Supp. 2d 76 (S.D.N.Y. 2008) ................................................... 44

*United States v. Jolliff*,
    548 F. Supp. 232 (D. Md. 1981) ......................................................... 45

*United States v. Koblitz,*
    803 F.2d 1523 (11th Cir. 1986) .................................................... 43, 46

*United States v. Musa,*
    833 F. Supp. 752 (E.D. Mo. 1993) ................................................ 44-45

*U.S. Dep't of Labor v. Triplett,*
    494 U.S. 715 (1990) ............................................................ 43

*Walsh v. Ahern Rentals, Inc.,*
    No. 21-16124, 2022 WL 118636 (9th Cir. Jan. 12, 2022) .................. 53

*Weber v. Buhrkuhl,*
    72 F.3d 134 (8th Cir. 1995) ................................................ 37

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) ................................................... 49, 52, 53

*Wisconsin Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) ........................................... 51

## Statutes:

28 U.S.C. § 1292(a)(1) ............................................. 4

28 U.S.C. § 1331 ..................................................... 3

## Other:

Katie Benner, *Little-Known Justice Dept. Official Makes Trump's
    Security Clearance List,*
    N.Y. Times (Aug. 15, 2018) ................................................ 5

Memorandum on Rescinding Security Clearances and Access to
    Classified Information From Specified Individuals,
    2025 Daily Comp. Pres. Doc. 388 (Mar. 21, 2025) ...................... 1, 5, 6

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CIA | Central Intelligence Agency |
| DCSA | Defense Counterintelligence and Security Agency |
| JA | Joint Appendix |
| ODNI | Office of Director of National Intelligence |

# INTRODUCTION

Article II vests the President with the exclusive power "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to … access … such information." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). Exercising this authority, President Trump issued a memorandum titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals." 2025 Daily Comp. Pres. Doc. 388 (March 21, 2025) ("Presidential Memorandum").  JA85-86.  This memorialized the President's "determin[ation] that it is no longer in the national interest for" Plaintiff-Appellee Mark Zaid "to access classified information." JA85.

On December 23, 2025, the District Court entered an extraordinary order overruling the President's determination that Plaintiff should not have access to classified information and specifically ordering the restoration of Plaintiff's security clearance.  JA303-341.  The District Court rested its order on purported First Amendment, due process, and right-to-counsel violations by the President in rescinding Plaintiff's security clearance and rejected the government's argument that

1

Plaintiff's challenge to the revocation of his security clearance is non-justiciable under *Egan*. This Court should reverse the preliminary injunction for at least two reasons.

First, the D.C. Circuit has squarely held that "[t]he Constitution commits the question whether to deny or revoke a security clearance to the Executive Branch," and "there are no manageable standards to support judicial review of clearance decisions." *Lee v. Garland*, 120 F.4th 880, 891 (D.C. Cir. 2024). Plaintiff's claims are therefore not justiciable. While this Circuit has permitted collateral challenges to the clearance review process outside the context of any particular clearance decision already made, it has squarely held that when a security clearance determination is directly challenged, even constitutional claims challenging the process by which the determination was made are barred. *Lee*, 120 F.4th at 894 (concluding that Lee's due process claims were non-justiciable). The district court ignored this critical distinction and directly overruled the President's decision to revoke Plaintiff's security clearance—As *Egan* and *Lee* make clear, the Constitution forbids "this sort of Monday-morning quarterbacking." *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018).

Even if Plaintiffs' claims were justiciable, they fail on the merits. Plaintiff's First Amendment claim fails because there are obvious non-retaliatory grounds for revoking his security clearance, namely, protecting national security interests. Plaintiff has also not been deprived of a constitutional property or liberty interest sufficient to state a claim under the Fifth Amendment. As *Egan* explains, no one has a "right" to a security clearance—much less a constitutional right to one. 484 U.S. at 528. Moreover, the government's interest in protecting national security interests outweighs any harm to Plaintiff or his clients. After all, Plaintiff was not fired from his job, his clients may still retain him in any representation, and his clients may still access classified information through any other cleared counsel.

The Court should therefore reverse the District Court's order granting in part Plaintiff's Motion for a Preliminary Injunction and denying Defendants' Motion to Dismiss.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331 because the causes of action pleaded arise under the Constitution and laws of the United States. JA15. The district court entered a

preliminary injunction on December 23, 2025.    JA303-341.    The government filed a timely notice of appeal on January 13, 2026.  JA342. This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

The issues presented are:

1.  Whether Plaintiff's challenge to the President's revocation of his security clearance is justiciable.

2.  Assuming Plaintiff's claims are justiciable, whether the district court abused its discretion in concluding that Plaintiff had demonstrated a likelihood of success on those claims and that the balance of equities weighed in favor of a preliminary injunction.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and Factual Background

**1.**  Plaintiff-appellee Mark Zaid is an attorney who describes his practice as "specializ[ing] in complex administrative and litigation matters primarily relating to national security, international law, foreign sovereign and diplomatic immunity, the Freedom of Information Act, and

the Privacy Act." JA18. According to his complaint, he has represented "federal employees', service members', and contractors' challenges to impending denials or revocations of their security clearances." JA18.

Plaintiff holds himself out publicly as an expert on security clearance issues. JA19 (describing congressional testimony). For example, when the New York Times reported in 2018 that "President Trump was revoking or reviewing security clearances of former officials who have emerged as some of his chief political antagonists," it quoted Plaintiff as an authority on security clearances and saying, "I do not question the president's ability to exercise this power." Katie Benner, *Little-Known Justice Dept. Official Makes Trump's Security Clearance List*, N.Y. Times (Aug. 15, 2018). JA277-278.

Plaintiff alleges that he "has had access to classified information since approximately 1995, upon his first completion of an SF-86." JA19. He further alleges that he has enjoyed access to classified information as part of his various representations. JA19-23.

**2.** On March 22, 2025, President Trump issued a memorandum titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals." JA84-87. This memorandum

provided: "I have determined that it is no longer in the national interest for the following individuals to access classified information," including "Mark Zaid." JA85. It further provided:

> Therefore, I hereby direct every executive department and agency head to take all additional action as necessary and consistent with existing law to revoke any active security clearances held by the aforementioned individuals and to immediately rescind their access to classified information. I also direct all executive department and agency heads to revoke unescorted access to secure United States Government facilities from these individuals.
>
> This action includes, but is not limited to, receipt of classified briefings, such as the President's Daily Brief, and access to classified information held by any member of the Intelligence Community by virtue of the named individuals' previous tenure in the Congress.
>
> In the event that any of the named individuals received a security clearance by virtue of their employment with a private entity, the United States Government entity that granted the security clearance should inform the private entity that these individuals' ability to access classified information has been revoked.
>
> This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

JA85-86.

**3.** Following this directive, Defendant agencies implemented the President's direction. On April 3, 2025, the Defense Counterintelligence and Security Agency ("DCSA") issued a memorandum to Mark Zaid titled "Revocation of Personnel Security Clearance Eligibility." JA89. This explained that "[p]ursuant to [the Presidential Memorandum], DCSA has revoked the security clearance held by you." JA89.

On April 9, 2025, the Central Intelligence Agency ("CIA") wrote a letter to Plaintiff explaining that, "[p]ursuant to [the presidential] memo," Plaintiff is "no longer personally permitted access to classified information in any ongoing matters that you are currently involved in with the Agency." JA91. The letter further explained, "You may continue to represent any current or future clients as you deem appropriate, but you cannot gain access to or make use of classified information in connection with such representations." JA91. Finally, "[t]o the extent necessary and appropriate, you are still permitted escorted access to Agency facilities and may review unclassified materials." JA91.

On April 23, 2025, the Office of the Director of National Intelligence ("ODNI") wrote to Plaintiff explaining that "Pursuant to President direction issued on 22 March 2025 … the individuals listed therein, no

longer have a security clearance, are not authorized for access to classified information, and do not have unescorted access to ODNI facilities." JA93.

### B.    Procedural Background

**1.**  On May 5, 2025, Plaintiff filed a complaint alleging that the Presidential Memorandum and its implementation violated the APA, First Amendment, Fifth Amendment right to due process, Fifth Amendment right to counsel, Fifth Amendment vagueness doctrine, and Bill of Attainder Clause.  JA31-38.

Plaintiff moved for a preliminary injunction as to all counts except the Bill of Attainder.  JA6.  Defendants opposed Plaintiff's Motion for a Preliminary Injunction and filed a Motion to Dismiss. JA6.  The District Court heard oral argument on June 27, 2025.  JA207.

**2.**  On December 23, 2025, the District Court issued the opinion and injunction under review.  JA303.  The District Court found that Plaintiff "has shown he is likely to succeed on multiple claims, that he has been irreparably harmed, and that the equities and public interest favor injunctive relief."  JA304.  Specifically, the District Court concluded that Plaintiff's claims were justiciable under *Egan* "because they challenge

8

the means of revoking his clearance—namely, the denial of any individualized assessment—not the substance of an individualized assessment." JA307 (capitalization altered). The District Court concluded that Plaintiff was likely to succeed on his First Amendment, Fifth Amendment due process, and Fifth Amendment right to counsel claims. JA316, 319, 323. The District Court further held that the Complaint stated a claim for violations of the APA, Fifth Amendment vagueness, and Bill of Attainder Clause. JA331, 334, 336. The District Court therefore "grant[ed] in part and denie[d] in part Zaid's motion for preliminary injunction" and "denie[d] the government's motion to dismiss." JA339.

In crafting relief, the District Court enjoined Defendants and other Executive Branch officers, agents, and attorneys "from giving effect to security clearance revocations or denials of access to or the ability to use classified information made pursuant to the March 22, 2025, Presidential Memorandum." JA340-41. But the District Court clarified that "[n]othing in this order shall bar the defendants from suspending or revoking any security clearance or access to classified information for reason independent of the presidential memorandum and pursuant to

ordinary agency process and applicable law." JA341. The District Court stayed the effect of its order "for twenty-one days, until January 13, 2026." JA341.

**3.** On January 6, 2025, Defendants timely filed a notice of appeal. JA342. On January 13, 2025, the district court injunction took effect. JA341.

## SUMMARY OF ARGUMENT

**I.** Plaintiff's challenge to the President's revocation of his security clearance is not justiciable. In *Dep't of Navy v. Egan*, the Supreme Court held that the Constitution vests the President with the "authority to classify and control access to information bearing on national security." 484 U.S. 518, 527 (1988). Applying *Egan*, this Court recently held that "an Executive Branch decision to deny or revoke a security clearance" is a political question unreviewable by courts. *Lee v. Garland* 120 F.4th 880, 891 (D.C. Cir. 2024). *Lee* involved First and Fifth Amendment claims similar to those asserted by Plaintiff here, and it squarely forecloses Plaintiff's various claims challenging the revocation of his security clearance.

The District Court fundamentally erred in concluding that Plaintiff's claims are justiciable notwithstanding *Egan* and *Lee* because he purports to challenge the "means" of revoking his clearance, not the substance of the President's security clearance determination.  In the context of this case, that is an illusory distinction, and it mischaracterizes Plaintiff's claims.  This Court and others have long recognized that claims challenging the *process* by which a security clearance was revoked, such as a challenge to the sufficiency of a security investigation, are barred under *Egan*, at least so long as the relief sought is to directly set aside the ultimate revocation of a security clearance. That is precisely the sort of claim Plaintiff has brought here.

Unlike in *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), Plaintiff is not challenging policies related to information-gathering methods or seeking relief in the form of limits on what information the government can collect going forward; rather, he is directly challenging the decision to revoke his security clearance and seeking relief in the form of reinstating his clearance. But this Court held in *Lee* that similar claims alleging due process and First Amendment violations were non-justiciable, explaining that *Greenberg* does not allow

11

plaintiffs to circumvent *Egan* and contest the revocation of their security clearances simply by framing their claims as challenges to the "methods" the government used. That is particularly true where, as here, the President himself made a specific determination that Plaintiff's continued access to classified information was not consistent with national security.

**II.** Even if Plaintiff's claims are justiciable, Plaintiff failed to demonstrate that he is both likely to succeed on the merits and that the balance of equities tips in his favor. Plaintiff's First Amendment claim fails because the government has adequate non-retaliatory grounds to revoke his clearance, namely, to protect information bearing on national security. Plaintiff's Fifth Amendment Due Process claim fails because he lacks any constitutional property or liberty interest, and even if he did possess any such interest, he received what process he was due. Plaintiff's right to counsel claim fails because that right is not absolute and must yield when balanced against the government's interest in protecting classified information. Finally, the equitable factors do not support an injunction, because the public interest in protecting classified

information outweighs any interest Plaintiff may have in accessing classified information on behalf of his clients.

## STANDARD OF REVIEW

This Court will "review a district court's weighing of the four preliminary injunction factors and its ultimate decision to issue or deny such relief for abuse of discretion, though any legal conclusions upon which the district court relies, including whether [Plaintiff-Appellee] ha[s] demonstrated irreparable injury, are reviewed de novo." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## ARGUMENT

### I. Plaintiff's Claims Challenging the President's Revocation of His Security Clearance Are Not Justiciable.

As this Court has repeatedly recognized, claims challenging security clearance determinations by the President or Executive Branch agencies are non-justiciable under *Dep't of Navy v. Egan*, 484 U.S. 518 (1988). Because Plaintiff's First Amendment and due process claims plainly challenge the revocation of his security clearance—indeed, the District Court ordered the restoration of his clearance—those claims are all barred under *Egan*. As this Court recently held in *Lee v. Garland*,

120 F.4th 880 (D.C. Cir. 2024), it makes no difference whether plaintiffs assert constitutional claims; *Egan* makes clear that the decision to deny or revoke a security clearance is textually committed to the Executive Branch and that there are no judicially manageable standards by which a court could evaluate a claim challenging such a decision.

The district court's conclusion that Plaintiff's claims here are justiciable because they challenge "the means of revoking his security clearance" rather than "the merits of any individualized national security assessment," JA311, rests on both a misunderstanding of Plaintiff's claims and an illusory distinction between "procedural" and substantive challenges to security clearance determinations that has no basis under *Egan*. Plaintiff is not seeking to enjoin the government from using some particular methodology in future security clearance adjudications; rather, Plaintiff is directly challenging the President's decision to revoke his security clearance. In issuing a preliminary injunction that restored Plaintiff's security clearance, the District Court engaged in precisely the sort of judicial second-guessing of Executive Branch determinations about who may have access to classified information that is forbidden under *Egan* and this Court's precedents.

14

### A.    Under *Egan*, Courts May Not Review Claims Challenging Security Clearance Decisions

In *Egan*, the Supreme Court held that outside, non-expert bodies cannot review Executive Branch judgments about whether individuals should be permitted to access classified information.  484 U.S. at 527-28.  Grounding that rule in separation-of-powers concerns, the Court emphasized that the duty to control access to classified information rests with the Executive Branch agency responsible for the information and derives from the President's authority under Article II of the Constitution.  *Id.*  The Court stressed that such determinations are an "inexact science," involving the exercise of "[p]redictive judgment" about security risks that "must be made by those with the necessary expertise in protecting classified information," and held that such judgments are "committed to the broad discretion of the agency responsible." *Id.* at 529.  As the Court summarized, "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence."  *Id.*  "Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk."  *Id.*

15

Applying *Egan*, this Court has repeatedly held that federal courts may not adjudicate claims that would require a factfinder to second-guess the merits of an Executive Branch agency's denial of a security clearance or similar decisions.  For example, in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), this Court held that *Egan* precluded Title VII claims challenging a decision by the Immigration and Naturalization Service refusing to waive background checks for foreign nationals seeking federal employment because "the waiver denials were tantamount to clearance denials and were based on the same sort of 'predictive judgment' that *Egan* tells us 'must be made by those with the necessary expertise in protecting classified information,' without interference from the courts." *Id*. at 524 (quoting *Egan*, 484 U.S. at 529).

Likewise, in *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005), this Court held that "employment actions based on denial of security clearance are not subject to judicial review, including under Title VII." *Id*. at 1001.  In recognition of the need to give the Executive Branch meaningful latitude to safeguard sensitive information, this Court has held that *Egan* precludes review of not only the formal denial or revocation of a security clearance, but also any related claim that would

16

require a "trier of fact … to consider the merits of" a security determination. *Bennett*, 425 F.3d at 1000.

This Court has also held that *Egan* forecloses claims outside of the Title VII context. For example, in *Oryszak v. Sullivan*, 576 F.3d 522 (D.C. Cir. 2009), this Court affirmed the dismissal of a claim brought by a Secret Service employee challenging the revocation of her security clearance under the Administrative Procedure Act. Relying on *Ryan*, *Bennett*, and *Egan* itself, this Court explained that "actions based upon denial of security clearance are committed to agency discretion by law, at least where a constitutional claim is not properly presented." *Id*. at 526.

Similarly, this Court has held that *Egan* is not limited solely to security clearance decisions, but also bars claims challenging other types of security-related decisions. Thus, in *Foote v. Moniz*, this Court held that *Egan* foreclosed a claim of race discrimination brought by a Department of Energy employee challenging his termination after the agency revoked his certification to work around nuclear materials. 751 F.3d 656, 659 (D.C. Cir. 2014). The Court reasoned that determinations about who should be cleared to have access to nuclear weapons and

materials involve the same types of predictive judgments as security clearance decisions and are thus not subject to review under *Egan*.  *Id.*

Other courts of appeals have similarly held that *Egan* bars judicial review of claims challenging security clearance determinations because any inquiry into an agency's reasons for revoking Plaintiff's clearance "would of necessity require some judicial scrutiny of the merits of the revocation decision."  *Perez v. FBI*, 71 F.3d 513, 514 (5th Cir. 1995). Courts have also repeatedly rejected attempts by plaintiffs to circumvent *Egan* by purporting to challenge the process used to make security clearance determinations, including the adequacy or propriety of investigations leading to the denial or revocation of a security clearance. *See, e.g.*, *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) (holding "that the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference"); *Hill v. White*, 321 F.3d 1334, 1336 (11th Cir. 2003) ("To review the initial stages of a security clearance determination is to review the basis of the determination itself regardless of how the issue is characterized.").

Finally, this Court recently held that *Egan* precludes judicial review of constitutional claims challenging the denial or revocation of a

security clearance "because the Constitution commits that decision to the Executive." *Lee*, 120 F.4th at 891.  Having previously reserved the question whether *Egan* bars review of constitutional claims in several prior cases, *see, e.g., Ryan*, 168 F.3d at 524; *Palmieri v. United States*, 896 F.3d 579, 590 (D.C. Cir. 2018), the Court undertook a comprehensive analysis of this issue and grounded its conclusion that plaintiff's claims were non-justiciable in the political question doctrine.  *Lee*, 120 F.4th at 891.

### B.    Plaintiff's Claims Are All Barred By *Egan*

Taken as whole, this Court's precedents make clear that Plaintiff's challenge to the President's revocation of his security clearance is non-justiciable.  In *Lee*, for example, the plaintiff—an FBI employee for ten years—failed two polygraph exams and subsequently had his security clearance revoked.  *Id.* at 884-85.  In Lee's telling, that revocation was unlawful because it "rested on a pretextual justification and harmed his reputation and employment prospects."  *Id.* at 885.  Lee also claimed that the underlying polygraph exams were "tainted by unlawful discrimination and retaliation" against Lee's exercise of his First Amendment rights, and that he did not receive adequate process because

the reviewer "fail[ed] to investigate the cause of his failed polygraph exams." *Id.* He thus brought claims that the revocation of his security clearance "was based on race, national origin and protected speech" in violation of the First Amendment, the Fifth Amendment, and Title VII. *Id.* at 883.

In holding that Lee's claims were non-justiciable under *Egan*, this Court made a number of observations that apply equally to Plaintiff's claims here. First, the Court emphasized that adjudicating Lee's constitutional challenges would present "unmanageable questions" unanswerable by a court. *Id.* at 893. Clearance decisions, after all, "involve an assessment of intangible qualities such as 'loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment.'" *Id.* (quoting Exec. Order No. 12,968). The "predictive judgment[s]" and "inexact science" implicated by those decisions "defy judicial application." *Id.*

Second, and perhaps more importantly here, the *Lee* Court distinguished *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), and rejected plaintiff's contention that it broadly authorized process-based challenges to security clearance determinations. As the

Court explained, *Greenberg* "allowed judicial review of (but rejected on the merits) claims that the Fifth Amendment prohibited asking clearance applicants about their use of illegal drugs or their mental health." *Lee*, 120 F.4th at 892. But the *Greenberg* plaintiffs' challenge to those questions and procedures did not arise in the context of any particular security clearance determination or seek relief in the form of granting or reinstating security clearances. The individual plaintiffs all held active security clearances, and they sued alongside unions representing federal employees to seek only prospective injunctive relief as "agency employees likely to be asked those questions in future clearance adjudications." *Id.* Their injuries "thus existed regardless of how the government might have resolved any particular application." *Id.* at 892-93. Accordingly, this Court explained in *Lee* that, "[i]n allowing judicial review of these claims, we stressed that the *Greenberg* plaintiffs did not seek review of 'discretionary judgments' regarding the merits of any 'particular employee's security clearance.'" *Id.* at 893 (quoting *Greenberg*, 983 F.2 at 290).

Unlike the plaintiffs in *Greenberg*, Plaintiff here directly challenges the revocation of his security clearance. He specifically requested—and

21

the District Court granted—an injunction prohibiting "any further implementation of the Memorandum's directives as to Mr. Zaid," and requiring the rescission of "the Defendants' revocation of Mr. Zaid's security clearance." JA20. That is a direct attack on the substance of the President's decision to revoke his clearance, notwithstanding Plaintiff's attempts to characterize his claims as a challenge to procedures akin to the one permitted in *Greenberg*.

*Lee* makes clear that Plaintiff cannot circumvent *Egan*'s bar by pretending that his claims do not challenge the merits of the President's revocation decision. As in *Lee*, Plaintiff argues that he did not receive enough process before his clearance was revoked. JA32-33. But he also claims that the President's invocation of the national interest is merely pretextual, and that in reality the President "is seeking to neutralize someone viewed as an adversarial threat." JA34. Plaintiff's complaint thus expressly invites judicial second-guessing of the President's security clearance determination, alleging that the President's reference to the "national interest" is "meaningless" and "vague." JA35-36. Plaintiff's complaint also invites the District Court to evaluate whether the purpose of the revocation decision was to "punish[]." JA37-38. And Plaintiff waxes

long about how, in his own view, he is "far from … a security risk." JA21-23. These allegations make clear that what Plaintiff challenges is the substance of the President's determination, not merely the procedures generally employed to make security clearance determinations.

In sum, Plaintiff's complaint makes clear that he wants the courts to opine on "whether Executive Branch officials had good enough reasons to revoke" his clearance. *Lee*, 120 F.4th at 895. But *Egan* forecloses this sort of judicial second-guessing of security clearance determinations. Indeed, this Court held in *Lee* that constitutional claims similar to the ones asserted by plaintiff here were non-justiciable because "[t]he Constitution commits the question whether to deny or revoke a security clearance to the Executive Branch." *Id.* at 891. Neither plaintiff nor the district court has identified any plausible basis for reaching a different conclusion in this case.

### C. The District Court's Attempts To Circumvent *Egan* And *Lee* Fail

Even if Plaintiff's claims did challenge the "means" of revoking his clearance, not the substance of the President's security clearance determination, his claims would still be barred under *Egan* and *Lee*, and the District Court fundamentally erred in concluding otherwise. In the

context of this case, the difference between the method and the substance of the revocation is an illusory distinction.  This Court and others have long recognized that claims challenging the *process* by which security clearances are revoked, such as challenges to the sufficiency of security investigations, are barred under *Egan* so long as they arise in the context of a particular adjudication or the relief sought is to directly set aside the ultimate revocation of a security clearance.

It is well settled that, when an administrative decision is unreviewable, a court "may not inquire" whether it is "procedurally defective" either. *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2019). If it were otherwise, "almost any challenge to an [unreviewable determination] could be recast as a challenge to its underlying methodology." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019).  The same goes for security-clearance decisions.  Any claim of inadequate process ultimately hinges on "what constitutes an acceptable margin of error in assessing the potential risk of granting or renewing a clearance." *Lee*, 120 F.4th at 894 (quotations omitted).  That is exactly the sort of inquiry which belongs exclusively to the Executive Branch.

This Court's precedents have thus consistently rejected process-based challenges to security-clearance decisions. In *Ryan*, for example, this Court rejected plaintiffs' attempt to "circumvent *Egan* by characterizing the challenged employment actions as procedural, divorced from any substantive security determination." 168 F.3d at 524. And in *Lee*, whether officials should have "investigate[d] further" or whether they should have used better polygraph methods all went to "whether Executive Branch officials had good enough reasons to revoke" a clearance—a decision far outside the judicial role. *Lee*, 120 F.4th at 894. As explained above, *Greenberg* allowed a claim that sought prospective relief concerning the questions that might be asked in future clearance investigations—not one that sought retrospective relief seeking to reverse a security clearance decision based on alleged defects in the process used to make that determination. *See Lee*, 120 F.4th at 892-93. Indeed, as to the latter type of claim—at issue here—*Greenberg* itself reaffirmed that "[t]he President has unlimited and judicially unreviewable constitutional power to determine" who "will be given access to the nation's secrets." 983 F.2d at 290.

Other courts have also rejected attempts to challenge security-clearance determinations by objecting to the processes used. In *Dalton*, for example, the Fourth Circuit rejected a plaintiff's attempt to challenge the initiation of an investigation that ultimately led to the revocation of the plaintiff's clearance. 94 F.3d at 149. The court explained that "the distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference," and the "question of whether the Navy had sufficient reasons to investigate the plaintiff as a potential security risk goes to the very heart of the 'protection of classified information [that] must be committed to the broad discretion of the agency responsible.'" *Id.* (quoting *Egan*, 484 U.S. at 529) (alteration in original). Similarly, in *El-Ganayni v. United States Department of Energy*, the Third Circuit held that claims alleging that constitutional violations occurred in the process of revoking a plaintiff's security clearance should be dismissed for failure to state a claim upon which relief can be granted because review of those claims "would inevitably involve scrutiny of the merits of the [agency's] decision to revoke [the plaintiff's] clearance"—an inquiry that "*Egan* forbids." 591 F.3d 176, 183-186 (3d Cir. 2010).

The district court's own description of Plaintiff's claim demonstrates the lack of any meaningful distinction between a challenge to the process of a clearance revocation and a challenge to the revocation itself, and the danger of reviewing any purported process claims in the context of a particular adjudication.  The court reasoned that "Zaid does not challenge the merits of any individualized national security assessment" but rather whether Zaid was afforded "meaningful process" and an "individualized assessment of his eligibility for clearance." JA311-312.  But there is plainly no way to determine whether the process of revoking Plaintiff's clearance was "meaningful" and whether it involved an adequately "individualized assessment" without inquiring into the process that was afforded and second-guessing the conclusions reached during that process.  As this Court recognized in *Ryan*, a court cannot review the adequacy of a process "without also challenging its validity."  168 F.3d at 524.  In short, Plaintiff's claims would require the district court to consider whether the process that was afforded was adequate to sustain the revocation of his security clearance, and adjudicating such a claim would require the district court to review the

merits of the President's revocation determination, which "run[s] smack up against *Egan*." *Id.*

Indeed, in concluding that Plaintiff's claims were justiciable under *Egan*, the district court stated its view that the presidential memorandum "was not based on any [individualized national security] assessment." JA314. But in order to make that finding, the court necessarily probed the reasons for the revocation of Plaintiff's clearance and evaluated their sufficiency—determinations that are committed to the discretion of the Executive Branch and for which there are no judicially manageable standards.

The district court's preliminary analysis of the merits of Plaintiff's claims underscores the error in the court's *Egan* analysis. For example, the district court concluded that Plaintiff was likely to prevail on his First Amendment retaliation claim because, among other reasons, the government's assertion that Plaintiff's clearance "might have been summarily revoked based on the 'obvious non-retaliatory grounds' of protecting classified information" was, in the court's view, not "supported by the record." JA318-319. And the court concluded that Plaintiff was likely to prevail on his right-to-counsel claim because, among other

reasons, his clients have allegedly "been deprived of their chosen counsel without compelling reason." JA325. But the district court necessarily evaluated the merits of the President's revocation determination—not just the process of that revocation—in order to determine whether there was a "compelling reason" to revoke Plaintiff's clearance and whether the record demonstrated adequate reason to take that action for the purpose of protecting classified information. Furthermore, the complaint itself makes clear that Plaintiff challenges the revocation decision itself—not just the process—because it seeks an order requiring the government to "[r]escind the … revocation of Mr. Zaid's security clearance," JA20, and that is the relief the district court granted in its preliminary injunction.

The district court's reliance on *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012), *see* JA308-311, is just as flawed as its reliance on *Greenberg*. *Rattigan* likewise was a case seeking relief only against a collateral aspect of the clearance process, without seeking to directly set aside any clearance decision. In particular, *Rattigan* concerned allegations that "FBI officials retaliated" against an employee "in violation of Title VII" by "reporting unfounded security concerns to the Bureau's Security Division," which "prompted an investigation into [the

29

plaintiff's] continued eligibility for a security clearance." 689 F.3d at 765. The D.C. Circuit "held that *Egan*'s bar on judicial review extends only to security clearance-related decisions made by the Security Division itself *and not to decisions by other FBI employees to report their concerns to the Division.*" *Id.* at 767 (emphasis added).[1] In doing so, the Court reiterated that "*Egan* bars [a plaintiff] from predicating liability on the actions of" the individuals actually engaged in making a security-clearance determination. *Rattigan v. Holder*, 643 F.3d 975, 986 (D.C. Cir. 2011). The Court thus created only a narrow opening for a plaintiff to establish liability based on the actions of an employee *not* involved in the security clearance determination based on that employee knowingly reporting false information that results in a security clearance investigation. *Id.* at 983-84. And in applying *Rattigan*, the D.C. Circuit has consistently looked to whether the relevant actor was "within the category of individuals authorized under *Rattigan* to make a judgment" call about an individual's suitability to access classified information. *Foote v.*

---

[1] Upon a motion for reconsideration, the panel narrowed its holding to only permit judicial review of "Title VII claims based on knowingly false reporting." 689 F.3d at 770. On remand and another appeal, plaintiff was unable to make this showing. *Rattigan v. Holder*, 780 F.3d 413 (D.C. Cir. 2015).

*Moniz*, 751 F.3d 656, 659 (D.C. Cir. 2014) (holding that agency psychologist fell within this category).

This case is unlike *Rattigan* in every relevant way. Most importantly, Plaintiff challenges the revocation of his security clearance. In contrast, the plaintiff in *Rattigan* did not challenge the revocation of his security clearance because his clearance had never been revoked; he instead challenged allegations made by individuals outside the security clearance process, which led to an investigation that did not culminate in the revocation of his clearance. *See* 643 F.3d at 981. Furthermore, unlike in *Rattigan*, Plaintiff does not challenge the actions of government officials or employees *outside* the security clearance process; instead, he challenges the actions of officials specifically charged with making security clearance determinations, including the President, who made the specific determination to revoke Plaintiff's clearance.

As a matter of both law and fact, the President is the ultimate arbiter of who may have access to classified information. Article II vests the President with discretion over whether to entrust Plaintiff with access to classified information, and the President directly exercised this authority through the Presidential Memorandum. Thus, while *Rattigan*

31

recognizes an exception to *Egan* for claims challenging the actions of those not authorized "to make a judgment about [the plaintiff's] suitability for certification," *Foote*, 751 F.3d at 659, that exception is obviously inapplicable to this case, where the challenged action was taken by the President.

## II. Even If His Claims Were Justiciable, Plaintiff Is Unlikely To Succeed On The Merits, And The Equities Strongly Disfavor A Preliminary Injunction.

Plaintiff's claims are not justiciable, but even on the merits, he is unlikely to succeed on his (A) First Amendment, (B) Fifth Amendment due process, (C) Fifth Amendment right to counsel claims. The district court also erred in entering a preliminary injunction because the balance of equities tip sharply in favor of the Government.

### A. The District Court Erred In Concluding That Plaintiff Was Likely To Succeed On His First Amendment Claim.

To start, this Court in *Lee* squarely addressed and squarely rejected Plaintiff's First Amendment theory. *Lee* alleged that his security clearance was revoked in "retaliation for [his] assertedly protected speech to media outlets." 120 F.4th at 895. But the D.C. Circuit held that his First Amendment claim was non-justiciable: "Like the Fifth Amendment

claims, this one also rests on injuries arising from the revocation and challenges its substantive basis" and so "it too is barred by *Egan*." *Id.* Here, Plaintiff makes the same allegations of retaliation that Lee raised. *See* JA13("for improper political retribution, President Donald J. Trump directed the summary revocation of security clearanc[e] for … Mr. Zaid"); JA14 (Presidential "Memorandum is … unconstitutional retaliation by the President"); JA31 ("Defendants' have engaged in blatant political retribution"). Plaintiff's First Amendment claims are therefore non-justiciable.

But even if this Court could hear this claim on the merits, Plaintiff would not prevail. To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that an official has "take[n] adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). For the reasons explained in *Lee*, it would be inappropriate to evaluate the President's motives under the first prong of *Nieves*. But the Government would prevail on the second prong even if it did reach the merits of the dispute: there are obvious non-retaliatory

grounds to revoke Plaintiff's security clearance, namely, to protect classified information.

Even if this Court could second-guess the President's determination, Plaintiff has not produced evidence as to his "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." *Lee*, 120 F.4th at 893. The District Court incorrectly "f[ound] that Zaid's representation of whistleblowers and other clients adverse to the government was the sole reason for summarily revoking his security clearance." JA318. At its heart, access to classified information involves an affirmative finding that someone should be entrusted with such access. *See Egan*, 484 U.S. at 527. The President has the unique responsibility to safeguard our nation's secrets, and he is well within his rights to limit someone's access if he determines that they do not meet the affirmative criteria for such access. This is also further proof of how courts lack any judicially manageable standards in second-guessing the President here.

Finally, even if Plaintiff could conclusively establish retaliation, the Government's action would still withstand First Amendment scrutiny if the Government's "legitimate interests … deferentially viewed, outweigh

34

the free speech interests at stake." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kansas v. Umbehr*, 518 U.S. 668, 685 (1996). Here, the President's legitimate interest in protecting our nation's classified information would outweigh Plaintiff's alleged free speech interests. And the court cannot second-guess those determinations. Thus, even if this Court concludes that Plaintiff's First Amendment claims are justiciable, Plaintiff cannot prevail.

### B. The District Court Erred In Concluding That Plaintiff Was Likely To Succeed On His Fifth Amendment Due Process Claim.

**1.** This Court squarely held in *Lee* that claims challenging the revocation of a security clearance under the Fifth Amendment are non-justiciable because such questions are textually committed to the Executive Branch, nor are there judicially manageable standards. *Lee*, 120 F.4th at 894. This Court also explicitly rejected the exact arguments that Plaintiff raises here, namely, that the revocation of his clearance was pretextual and harms his reputation. *Compare* JA14 (the Presidential "Memorandum is … retaliation by the President of the United States against his perceived political enemies"), *with Lee*, 120 F.4th at 894 ("Lee asserts that the … revocation decision rested on

35

pretextual and untrue statements … and that the revocation harmed his reputation and future job prospects"). Again, *Lee* should be conclusive.

Regardless, Plaintiff's claim fails on the merits. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Here, Plaintiff cannot demonstrate that he has been deprived of any constitutional interest; he also received all process that he was due.

As the District Court recognized, Plaintiff concedes that he does not have a constitutional property interest. *See* JA322 (Plaintiff does not "asser[t] … a property interest"); *cf. Gill v. U.S. Dep't of Justice.*, 875 F.3d 677, 681 (D.C. Cir. 2017) ("[c]onceding that he had no constitutionally protected property interest in his security clearance").

Plaintiff instead maintains that he has a constitutional liberty interest. But every U.S. Court of Appeals to address this issue has held that an individual "does not have a constitutional … liberty interest in his security clearance." *Hill v. Department of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988); *see also Jones v. Dep't of Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992) ("no employee has a … 'liberty' interest in a security

clearance or access to classified information"); *Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990) ("It follows that the revocation does not infringe upon one's … liberty interests."); *El-Ganayni v. U.S. Dept' of Energy*, 591 F.3d 176, 187 n.6 (3d Cir. 2010) ("No one, including [claimant], has a right to a security clearance, and where there is no right, no process is due under the Constitution.") (internal citations omitted); *Weber v. Buhrkuhl*, 72 F.3d 134 (8th Cir. 1995) (same); *Dorfmont*, 913 F.2d at 1404 ("There is no right to maintain a security clearance, and no entitlement to continued employment at a job that requires a security clearance.  [Claimant] has not established a cognizable liberty or property interest and therefore is not entitled to constitutional due process protection.").  There is not a single circuit to the contrary.

This should be obvious, because "no one has a 'right' to a security clearance," which "requires an affirmative act of discretion on the part of the granting official." *Egan*, 484 U.S. at 528.  "The notion of" such a "right" is "utterly inconsistent with" the separation of powers, and so "[w]hatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right."

*Hill*, 844 F.2d at 1413.  Plaintiff therefore has "no due process rights with respect to the procedures used to determine whether to suspend or revoke his security clearance." *Gargiulo v. Dep't of Homeland Sec.*, 727 F.3d 1181, 1185 (Fed. Cir. 2013).

In its one case addressing this issue, this Court held that an individual had no Fifth Amendment "property interest" in a security clearance.   *Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989). Undeterred, the district court frames *Cheney* as "recognizing" a liberty-interest claim in the security-clearance context. JA322.  But *Cheney* was resolved without ever deciding that a liberty interest was present, because it held that the plaintiff was accorded due process in any event. *Cheney*, 885 F.2d at 909. Later cases have taken the same course. *See, e.g.*, *Gill*, 875 F.3d at 681 (declining to address whether individual has "protected liberty interest" because "he received all the process that was due"). In the end, this Court has never found a liberty or property interest in a security clearance, and it should not start now.

**2.**  The District Court nevertheless held that Plaintiff was likely to succeed on his due process claim, because the Presidential memorandum "alters status—including by excluding the plaintiff from employment

opportunities or precluding him from pursuing his chosen career—and stigmatizes the plaintiff's reputation." JA322. Again, this test is taken from *Cheney*, which itself never held that a liberty interest inhered in the security-clearance decision in that case. But even under this standard, Plaintiff cannot show an alteration in status or stigmatization within the meaning of case law.

First, Plaintiff's loss of access to national security information is not a change of "status" within the meaning of case law. In reaching a contrary conclusion, the District Court relied on *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1111-12 (D.C. Cir. 1985), which concerned the dismissal of "a DOJ attorney amidst charges of unprofessional conduct and dishonesty." *Id.* at 1095. There—as in *Egan*, *Lee*, and even *Cheney*—the plaintiff was a government official who lost his job. *See Doe*, 753 F.2d at 1112; *Egan*, 484 U.S. at 522; *Lee*, 120 F.4th at 883; *Cheney*, 885 F.3d at 910. In contrast, this case does not concern "[l]oss of present or future government employment," which *Doe* described as "satisf[ying] that required additional interest." *Doe*, 753 F.2d. at 1111. Here, Plaintiff still has his job. He still has his license to practice law. He may still petition the Government or litigate in any court as he sees fit.

Where courts have evaluated an individual's future employment opportunities after being fired or denied a security clearance, they have characterized a plaintiff's field of chosen employment broadly. For example, this Court has explained that it is sufficient to allege that government "action precludes [a plaintiff] from pursuing her profession as a Russian language translator" but insufficient to allege that she "has merely lost one position in her profession but is not foreclosed from reentering the field." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994); *compare Greene v. McElroy*, 360 U.S. 474, 475-76 (1959) ("After his discharge, petitioner was unable to secure employment as an aeronautical engineer and for all practical purposes that field of endeavor is now closed to him"), *with Ranger v. Tenet*, 274 F. Supp. 2d 1, 8 (D.D.C. 2003) (security clearance action did not implicate ability to find employment "in the field of corporate security"); *cf. Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 896 (1961) ("All that was denied her was the opportunity to work at one isolated and specific military installation"). Here, Plaintiff may still practice law—indeed, by his own admission, he practiced law for years without a security clearance. JA14, 19, 20. Going forward, he is only

40

deprived of the ability to access classified information as part of his legal practice, but that limitation is coextensive with the revocation itself. *See Dorfmont*, 913 F.2d at 1403. Any attempt to narrowly characterize his chosen profession as practicing law with and only with a security clearance would effectively recognize a constitutional property or liberty interest in holding a security clearance—which the Courts of Appeals have repeatedly refused to do.

Second, the District Court erred in concluded that "Zaid has also shown stigmatization of his reputation that goes beyond revocation of the security clearance itself." JA321. Again, *Lee* rejected this argument. 120 F.4th at 894 ("Lee asserts … that the revocation harmed his reputation"). Moreover, the Supreme Court has made clear that revoking "a clearance does not equate with passing judgment upon an individual's character." *Egan*, 484 U.S. at 528. Denial of a clearance does not "operat[e] to bestow a badge of disloyalty or infamy." *Cafeteria*, 367 U.S. at 898; *see also Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984) ("to be denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic"); *Jamil*, 910 F.2d at 1209 ("because of the inherently discretionary judgment required in the decisionmaking

process, no one has a right to a security clearance, and revocation does not constitute an adjudication of one's character") (quotation omitted); *Jones*, 978 F.2d at 1226 ("loss of [security clearance] did not reflect upon their character").  The President's decision to revoke his security clearance cannot provide a basis for a Fifth Amendment procedural due process claim.

The President's statements also fall short of the stigma found in other cases.  The District Court primarily relied upon *Doe*, which turned on "charges of unprofessional conduct and dishonesty" against a DOJ attorney.  *Id.* at 1095.  Even there, one judge expressed concern that the "stigma" analysis raised "separation of powers concerns."  *Id.* at 1122-24 (J. MacKinnon, dissenting in part and concurring in part).  Here, the face of the Presidential Memorandum only describes the President's conclusion that granting Plaintiff access to classified information is not in the "national interest."  Any additional political rhetoric is not an official adjudication of dishonesty.  Unlike *Doe*, the separation of powers concerns are at their apex here, where the Executive Branch action squarely concerns national security and the speech at issue is the President's.  Any limitation on the President's speech—especially on

matters of public importance, national security, and his own impeachment trial—would raise serious separation of powers concerns, above and beyond those raised by the partial dissent in *Doe*. "We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result." *Paul v. Davis*, 424 U.S. 693, 699 (1976).

## C. The District Court Erred In Concluding That Plaintiff Was Likely To Succeed On His Fifth Amendment Right to Counsel Claim.

Finally, the District Court incorrectly held that Plaintiff was likely to succeed on his Fifth Amendment right to counsel claim. JA324. The District Court's holding turned its conclusion that the President's "summary revocation of Zaid's security clearance was not based on any national security interest" and that "the government's sole interest was retribution against an attorney for representing clients adverse to the government." JA326. But this is the very sort of attack on the merits that *Lee* forecloses.

Even on the merits, "[t]he constitutional right to choice of counsel … is not absolute." *United States v. Friedman*, 849 F.2d 1488, 1490 (D.C. Cir. 1988). It "must be balanced against the government's interest in the

fair, orderly, and effective administration of the courts which, in a given case, may require an accused to resort to his second choice of counsel." *United States v. Koblitz*, 803 F.2d 1523, 1528 (11th Cir. 1986); *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 722-24 (1990) (weighing government interest restricting payments to counsel).

Significantly, Plaintiff can still represent any and all clients he wishes—and his clients may still retain his services for any legal matter. He may still appear before any court, agency, or committee. Even if Plaintiff cannot access classified information on behalf of his clients, other co-counsel still can. To the extent that any current or future clients wish to retain a counsel with a security clearance, they may continue to retain any other cleared counsel in the country and so have ample "alternative channels of communication." *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

Courts have widely held that requiring non-cleared counsel to submit to background investigations in order to access classified information does not unconstitutionally burden the rights of litigants to their counsel of choice. *See, e.g.*, *United States v. Hashmi*, 621 F. Supp. 2d 76, 83 (S.D.N.Y. 2008) ("While requiring security clearances may, to

some extent, impose on the Defendant's right to his counsel of choice, that interest is outweighed by countervailing governmental interests."); *United States v. Musa*, 833 F. Supp. 752, 756 (E.D. Mo. 1993) ("The sixth amendment is not implicated by" requiring defense counsel to obtain security clearances before accessing classified information, "as nothing in that amendment guarantees a defendant an unlimited right to the paralegals, secretaries, or translators of his own choosing."); *United States v. Jolliff*, 548 F. Supp. 232, 233 (D. Md. 1981) (requiring defense counsel to obtain security clearances in accord with government procedures did not "interfere[e] with defendant's sixth amendment right to counsel"). Courts may and do require non-cleared counsel to submit to such procedures without interfering with parties' right to counsel. *See, e.g., United States v. Bin Laden*, 58 F. Supp. 2d 113, 123 (S.D.N.Y. 1999), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) ("counsel must submit to the DOJ-initiated security clearance procedure should they wish to have access to classified information"); *United States v. Al-Arian*, 267 F. Supp. 2d 1258, 1267 (M.D. Fla. 2003) ("[r]equiring lawyers and their staffs to submit to a security clearance procedure to protect classified information").

45

Moreover, there is generally no right to access classified information in civil cases at all—the types of cases that Plaintiff states that he generally practices. Indeed, in one case where a trial court enjoined the Federal Government to grant special access security clearances to attorneys contrary to the Executive Branch's policies, the appellate court granted a writ of mandamus and vacated the trial court's order on the grounds that *Egan* foreclosed judicial review of presidential and agency security clearance determinations. *See In re United States*, 1 F.3d 1251 (Fed. Cir. 1993). These authorities demonstrate that the President's decision to revoke a single attorney's continued access to classified information does not impermissibly interfere with the constitutional rights of Plaintiff's current or future clients to petition the government or retain their counsel of their choice.

To repeat, because evaluating Plaintiff's right-to-counsel claim necessarily implicates value judgments that can be made only by the Executive, *Lee* forecloses judicial review. Nonetheless, even were this Court to plow ahead, the Government's interests here are entitled to the "utmost deference." *Egan*, 484 U.S. at 530. The Government has a "compelling interest in withholding national security information from

unauthorized persons in the course of executive business." *Id.* at 527. Plaintiff has given no indication that his clients' interests in being represented by him specifically can override that interest. Indeed, he has not even bothered to show (presumably because he cannot show) that his clients lack a "second choice" of counsel. *Koblitz*, 803 F.2d at 1528.

### D. The equitable factors do not support an injunction.

The balance of the equities weighs heavily against granting a preliminary injunction. The governmental and public interest in protecting the Nation's secrets is vast and will be harmed by the district court's preliminary injunction of the President's security-clearance determination as to Plaintiff. And whatever injury Plaintiff would suffer in the absence of this preliminary injunction is too remote and speculative to justify supplanting the Executive Branch's authority to safeguard classified information.

The United States and the public have an overwhelming interest in protecting the Nation's secrets. Because it "is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation," "the Government has a compelling interest in protecting … the secrecy of information important to our national security." *Haig v. Agree*,

453 U.S. 280, 307 (1981) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)).  Interference with the Executive Branch's security-clearance determinations undermines these "clear and unarguable" national-security interests.

The district court's interference with the Executive Branch's stewardship of classified information harms the government and the public.  The President's "authority to classify and control access to information bearing on national security … flows primarily from [the] constitutional investment of power in" him as Commander in Chief. *Egan*, 484 U.S. at 528.  Judicially usurping the President's authority in this field raises grave separation-of-powers, national-security, and public-safety concerns. *Hamilton v. Transp. Sec. Admin*, 240 F. Supp. 3d 203, 206 (D.D.C. 2016) ("[T]aking the unprecedented step of enjoining an agency's decision to revoke an employee's security clearance and reinstating that employee to his position within the agency would implicate serious public safety and national security concerns.").  For these reasons, courts have traditionally deferred to the political branches' discretionary national-security judgments. *Trump v. Hawaii*, 585 U.S. 667, 704 (2018) (explaining that the Judiciary's "inquiry into matters

of . . . national security is highly constrained" (quoting *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976)); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 36 (2010) (describing deference to the political branches "in national security and foreign affairs").

Furthermore, courts should be extremely reluctant to enter a preliminary injunction that "jeopardiz[es] national security." *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 33 (2008). So much so that even when "plaintiffs are correct on the underlying merits," the Supreme Court has found the grant of a preliminary injunction to be an abuse of discretion when the United States's interests and national-security risks outweighed the "harm on the other side of the balance." *Id.* at 31 n.5. Here, not only does the United States have the better merits argument, but the massive governmental and public interests at stake weigh heavily in its favor.

Against those serious harms to national security and the President's constitutional authority as Commander in Chief, any potential irreparable injury to the plaintiff is insignificant. Contrary to the district court's reasoning, *see* JA327-328, Zaid does not have cognizable First or Fifth Amendment freedoms in maintaining a security

49

clearance or the clearance revocation process. As such, there is no prospective constitutional injury to support a preliminary injunction. Similarly, whatever reputational and economic harms Zaid might suffer from not having a security clearance are too speculative and immeasurable to support extraordinary preliminary relief. And finally, purported interference with a third party's right to chosen counsel cannot be a basis for a finding of irreparable injury to the plaintiff.

First, the Presidential Memorandum and the revocation of Zaid's clearance did not deprive Zaid of any protected First or Fifth Amendment interests. As discussed above, Zaid is not entitled to a security clearance and does not have a recognized free speech interest in maintaining one. To be clear, individuals do not have a right to receive or access classified information. *See Dhiab v. Trump*, 852 F.3d 1087, 1096 (D.C. Cir. 2017) (recognizing that neither individuals nor the public have a right to receive classified information even when it is filed in court). And even assuming the revocation of Plaintiff's clearance was retaliation for his past speech, that does not directly regulate his future speech and there is no evidence that it is affecting his future speech. *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (explaining that "a showing of irreparable

injury . . . cannot be met where there is no showing of real or immediate threat that the plaintiff will be wronged again").

Second, Zaid has not suffered irreparable reputational or economic harm to justify a preliminary injunction. The only purported reputational harm that the district court credited had to do with "accusations of disloyalty from the nation's highest offices that directly threaten his standing as a national security lawyer." JA328 (citing JA19-20, 23-25) (other citations omitted). But neither the district court nor Zaid explained how "accusations" could possibly merit enjoining the President or agencies from making security-clearance determinations. In other words, the district court's overriding of the President's national-security determinations does nothing to address Zaid's complaints about reputational harm. And, as discussed earlier, these sorts of past comments do not justify preliminary injunctive relief. *Lyons*, 461 U.S. at 111.

Furthermore, any prospective economic harms Zaid might suffer from not having a security clearance are insufficient to warrant injunctive relief. "Unrecoverable economic losses do not automatically constitute irreparable harm." *Save Jobs USA v. U.S. Dep't of Homeland*

*Sec.*, 105 F. Supp. 3d 108, 115 (D.D.C. 2015).  Instead, any economic harm must be "certain and great."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  No such harm is imminent here.  But even if it were, this Court has held that "imminent loss" of a job as a result of being denied a security clearance does not amount to irreparable harm. *Steinberg v. Fed. Deposit Ins. Corp.*, No. CV 05-15 (RMC), 2005 WL 8178138, at *4 (D.D.C. Feb. 9, 2005); *see also Hamilton v. Transp. Sec. Admin*, 240 F. Supp. 3d 203, 206 (D.D.C. 2016) (explaining that "financial stress stemming from his indefinite suspension and proposed termination" resulting from denial of security clearance "does not support a finding of irreparable injury"); *Glines v. U.S. Dep't of Def.*, No. 24-CV-1222, 2025 WL 1207085, at *11 (D.D.C. Apr. 25, 2025) (analyzing irreparable harm in context of suit alleging Administrative Procedure Act, Fifth Amendment, and Title VII violations resulting from denial of security clearance and loss of government job).  Here, Zaid has not lost his job.  He may still practice law and appear in court.  He has lost only his security clearance and access to classified information.  This does not justify injunctive relief.

Third, a non-party's right to chosen counsel cannot be the basis of a preliminary injunction. To warrant a preliminary injunction, the plaintiff must establish that "*he* is likely to suffer irreparable harm in the absence of preliminary relief" to support a preliminary injunction. *Winter*, 555 U.S. at 21 (emphasis added). Harm to "one or more third parties" is irrelevant. *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 622 (1st Cir. 1995) ("[T]he issuance of a preliminary injunction requires a showing of irreparable harm *to the movant* rather than to one or more third parties." (emphasis in original)); *Walsh v. Ahern Rentals, Inc.*, No. 21-16124, 2022 WL 118636, at *2 n.2 (9th Cir. Jan. 12, 2022) ("The irreparable-harm analysis focuses on the moving party, not the nonmoving party or some third party." (citing *Winter*, 555 U.S. at 22)). Therefore, even assuming third parties may be harmed by the revocation of Zaid's security clearance, harm to those third parties does not support a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be reversed.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
  *Associate Attorney*
  *General*

  *s/ Abhishek S. Kambli*
ABHISHEK S. KAMBLI
  *Deputy Associate Attorney*
  *General*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-6993*
  *Abhishek.Kambli@usdoj.gov*

FEBRUARY 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,189 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font.

*/s/ Abhishek S. Kambli*
Abhishek S. Kambli

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Abhishek S. Kambli*

Abhishek S. Kambli

**ADDENDUM**

# TABLE OF CONTENTS

U.S. Const. art. II, Sec. 1, Cl. 1. ............................................................... A1

U.S. Const. art. II, Sec. 2., Cl. 1 ............................................................... A1

**Article II, Section 1, Clause 1:**

The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows

**Article II, Section 2, Clause 1:**

The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and he shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.