**ORAL ARGUMENT SCHEDULED FOR MAY 14, 2026**

No. 26-5009

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

---

MARK S. ZAID,
> *Plaintiff-Appellee,*

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,
> *Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia, Case No. 1:25-cv-01365-AHA

---

### BRIEF OF PLAINTIFF-APPELLEE MARK S. ZAID

---

Abbe David Lowell
Caleb Hayes-Deats
David A. Kolansky
Isabella M. Oishi
John P. Bolen
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Tel: (202) 964-6110
alowellpublicoutreach@
lowellandassociates.com

Margaret M. Donovan
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
mdonovan@koskoff.com

Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Penn. Ave., S.E., #15180
Washington, DC 20003
Tel: (202) 594-9958
norman@statedemocracydefenders.org

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel for Plaintiff-Appellee certify the following:

### A.    Parties and Amici

The parties and *amici* appearing before the District Court and in this Court to date are listed in Appellants' opening brief.

### B.    Rulings Under Review

References to the rulings at issue appear in Appellants' opening brief.

### C.    Related Cases

The following related cases are currently pending before the D.C. Circuit: *Perkins Coie LLP v. DOJ*, No. 25-5241 (D.C. Cir.); *Jenner & Block LLP v. DOJ*, No. 25-5265 (D.C. Cir.); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, No. 25-5277 (D.C. Cir.); *Susman Godfrey LLP v. Exec. Off. of the President*, No. 25-5310 (D.C. Cir.).

Dated: March 20, 2026                Respectfully Submitted,

*/s/ Abbe David Lowell*               */s/ Margaret M. Donovan*
Abbe David Lowell                    Margaret M. Donovan
Caleb Hayes-Deats                    KOSKOFF, KOSKOFF & BIEDER, PC
David A. Kolansky                    350 Fairfield Ave., Suite 501
John P. Bolen                        Bridgeport, CT 06604
LOWELL & ASSOCIATES, PLLC            Tel: (203) 336-4421
1250 H Street, NW, Suite 250         Fax: (203) 368-3244
Washington, DC 20005                 mdonovan@koskoff.com
Tel: (202) 964-6110
Fax: (202) 964-6116
alowellpublicoutreach@lowellandassociates.com


*/s/ Norman L. Eisen*
Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@statedemocracydefenders.org


                        *Counsel for Plaintiff-Appellee Mark S. Zaid*

ii

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT ........................................................................3

STATEMENT OF THE ISSUES ............................................................................3

STATEMENT OF THE CASE.................................................................................3

    A.  The Security Clearance Adjudication Process ..............................................3

        1.  Relevant Executive Orders ....................................................................4

        2.  The SEAD-4 Guidelines ........................................................................5

        3.  Process for Denials and Revocations .....................................................6

    B.  Factual Background .....................................................................................7

    C.  Procedural History .......................................................................................9

STANDARD OF REVIEW ...................................................................................13

SUMMARY OF THE ARGUMENT .....................................................................13

ARGUMENT .........................................................................................................17

    I.   The District Court Correctly Held that Mr. Zaid's Claims Are
        Justiciable....................................................................................................17

    II.  The District Court Correctly Found That Mr. Zaid Will Likely    Succeed
        on the Merits and that the Equities Favor an Injunction...........................29

        A.  The District Court Correctly Found a Likelihood of Success. ...............29

            1.  Mr. Zaid Will Likely Succeed on His First Amendment Claim
               (Count Three). ...................................................................................30

            2.  Mr. Zaid Will Likely Succeed on His Fifth Amendment  Procedural
               Due Process Claim (Count Two). ......................................................34

            3.  Mr. Zaid Will Likely Succeed On His Fifth Amendment Right to
               Counsel Claim (Count Five) .............................................................42

B.  The District Court Correctly Determined That Mr. Zaid Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief.........................45

C.  The District Court Correctly Concluded the Balance Of Equities and the Public Interest Strongly Favor Granting Mr. Zaid's Preliminary Injunction. ....................................................................................................48

CONCLUSION ...........................................................................................................52

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airways Charters, Inc. v. Regan,*
746 F.2d 865 (D.C. Cir. 1984) ...............................................................43

*Anderson v. City of Bessemer City,*
470 U.S. 564 (1985).................................................................................13

*Armour & Co. v. Freeman,*
304 F.2d 404 (D.C. Cir. 1962) ...............................................................48

*Bowen v. Michigan Acad. of Fam. Physicians,*
476 U.S. 667 (1986).................................................................................20

*Campbell v. District of Columbia,*
894 F.3d 281 (D.C. Cir. 2018) ...............................................................40

*Caplin & Drysdale, Chartered v. United States,*
491 U.S. 617 (1989).................................................................................42

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ...............................................................45

*Covad Commc'ns Co. v. Bell Atl. Corp.,*
398 F.3d 666 (D.C. Cir. 2005) ...............................................................30

*De Sousa v. Dep't of State,*
840 F. Supp. 2d 92 (D.D.C. 2012) .........................................................45

*Dep't of the Navy v. Egan,*
484 U.S. 518 (1988)........................................................................ *passim*

*Doe v. Casey,*
796 F.2d 1508 (D.C. Cir. 1986) .............................................................39

*Doe v. Cheney,*
885 F.2d 898 (D.C. Cir. 1989) ......................................................... 35, 38

*Doe v. Gates,*
981 F.2d 1316 (D.C. Cir. 1993) .............................................................21

*Doe v. U.S. Dep't of Just.,*
753 F.2d 1092 (D.C. Cir. 1985) .............................................................40

*Dorfmont v. Brown,*
913 F.2d 1399 (9th Cir. 1990)................................................................37

v

*El-Ganayni v. U.S. Dep't of Energy*,
  591 F.3d 176 (3d Cir. 2010)...........................................................37

*Foote v. Moniz*,
  751 F.3d 656 (D.C. Cir. 2014) .......................................................24

*Gordon v. Holder*,
  721 F.3d 638, 653 (D.C. Cir. 2013) ......................................... 46, 51

*Greene v. McElroy*,
  360 U.S. 474 (1959).................................................................7, 35

*Hamilton v. Transp. Sec. Admin*,
  240 F. Supp. 3d 203 (D.D.C. 2016) ...............................................50

*Hill v. Dep't of Air Force*,
  844 F.2d 1407 (10th Cir. 1988)................................................ 36, 37

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022).....................................................................30

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022) .......................................................13

*In re NTE Conn., LLC*,
  26 F.4th 980 (D.C. Cir. 2022) .......................................................47

*In re Sealed Case*,
  494 F.3d 139 (D.C. Cir. 2007) ......................................................45

*Jamil v. Secretary, Dep't of Defense*,
  910 F.2d 1203  (4th Cir. 1990)......................................................37

*Jones v. Dep't of Navy*,
  978 F.2d 1223 (Fed. Cir. 1992)......................................................37

*Kartseva v. Dep't of State*,
  37 F.3d 1524 (D.C. Cir. 1994) .......................................... 35, 38, 39

*Kennedy v. Comm'r of Internal Revenue*,
  142 F.4th 769 (D.C. Cir. 2025) ......................................................38

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)......................................................................42

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016). .........................................................51

*Lee v. Garland*,
  120 F.4th 880 (D.C. Cir. 2024) ...............................................*passim*

vi

*Legal Svcs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)........................................................................44

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)........................................................................27

*Martinez v. Ryan*,
    566 U.S. 1 (2012)............................................................................42

*Media Matters for Am. v. Paxton*,
    138 F.4th 563 (D.C. Cir. 2025) ......................................................13

*Mills v. District of Columbia*,
    571 F.3d 1304 (D.C. Cir. 2009) ......................................................46

*Nader v. Democratic Nat'l Comm.*,
    567 F.3d 692  (D.C. Cir. 2009) .......................................................30

*Nat'l Fed'n of Fed. Emps. v. Greenberg*,
    983 F.2d 286 (D.C. Cir. 1993) ............................................... *passim*

*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024)..........................................................................1

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................49

*O'Donnell v. Barry*,
    148 F.3d 1126 (D.C. Cir. 1998)............................................... 36, 39

*Perez v. F.B.I.*,
    71 F.3d 513 (5th Cir. 1995)............................................................22

*Perkins Coie LLP v. U.S. Dep't of Just.*,
    783 F. Supp. 3d 105 (D.D.C. 2025) ................................................23

*Powell v. State of Ala.*,
    287 U.S. 45 (1932)..........................................................................43

*Ralls Corp. v. CFIUS*,
    758 F.3d 296 (D.C. Cir. 2014) ......................................... 18, 25, 26

*Ralpho v. Bell*,
    569 F.2d 607 (D.C. Cir. 1977) ................................................. 18, 26

*Rattigan v. Holder*,
    689 F.3d 764 (D.C. Cir. 2012) ................................................ *passim*

*Reed v. Goertz*,
    598 U.S. 230 (2023)........................................................................34

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) ...................................................................................46

*Ryan v. Reno*,
    168 F.3d 520 (D.C. Cir. 1999) ...............................................................24

*Trump v. Hawaii*,
    585 U.S. 667 (2018) .................................................................................51

*U.S. Dep't of Lab. v. Triplett*,
    494 U.S. 715 (1990) .................................................................................42

*Ungar v. Smith*,
    667 F.2d 188 (D.C. Cir. 1981) .......................................................... 18, 26

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006) .................................................................................42

*United States v. Hale-Cusanelli*,
    3 F.4th 449 (D.C. Cir. 2021) ...................................................................13

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
    793 F.3d 85 (2015) ...................................................................................30

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ................................................................47

*Webster v. Doe*,
    486 U.S. 592 (1988) .......................................................................... 20, 39

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*,
    784 F. Supp. 3d 127 (D.D.C. 2025) ........................................................28

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .............................................................................. 49, 51

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ................................................................47

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971) .................................................................................41

**Statutes**

28 U.S.C. § 1331 .............................................................................................3

28 U.S.C. § 1292 .............................................................................................3

**Other Authorities**

11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2948.1 (3d ed. 2013 & 2015 Supp.) ................................................................................................47

D.C. R. Prof'l Conduct l.3 ................................................................................36

Executive Order 12968 ......................................................................................4

Executive Order 13467 ...................................................................................4, 5

**INTRODUCTION**

The government cannot "use the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024). This case concerns an unconstitutional policy enacted to do just that. Shortly after taking office, the President issued a memorandum (the Presidential Memorandum) targeting the security clearances of a sprawling group of his perceived enemies, their lawyers, and their family members. As interpreted by the relevant agencies, the Presidential Memorandum constituted a directive to disregard then-existing procedures and institute a blanket revocation of the security clearances of those it named. Appellant Mark S. Zaid, an attorney who has represented government whistleblowers, is among those whose clearances were revoked.

As the district court noted, "the government does not argue the decision to summarily revoke Zaid's clearance was based on anything other than his prior representations of clients in matters adverse to the government." JA315. And on appeal, the government does not dispute the district court's finding that "the government has not conducted any individualized assessment of Zaid's eligibility for security clearance." JA312.

Rather than contesting whether they retaliated against Mr. Zaid or deprived him of the processes to which he was entitled under the applicable regulations, Appellants double down on the extraordinary position that their unlawful actions are

entirely insulated from judicial review. But that view, in addition to being inimical to the values animating the Bill of Rights and the separation of powers, is contrary to binding precedent in this Circuit.

The district court correctly concluded that Mr. Zaid's claims are justiciable. Under the law of this Circuit, it is well settled that courts may review a challenge to the "constitutionality of the *methods* used" to reach security clearance determinations. *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993) (emphasis added). Rather than contesting the substance of an individualized national security assessment, Mr. Zaid challenges a *policy* that deprived him of such an assessment and effectuated the wholesale revocation of a group of security clearances without any process. His claims thus fit comfortably within the category of cases that this Circuit has recognized as justiciable. *See id.* at 289–90.

Further, the district court rightly held that Mr. Zaid is likely to succeed on his claims that the government's summary revocation of his security clearance violated (1) the First Amendment, (2) procedural due process, and (3) the right to counsel. Because these violations irreparably harmed Mr. Zaid, and the government has no legitimate interest in violating his rights, Appellants fail to demonstrate that the district court abused its discretion in issuing the preliminary injunction. This court should affirm.

## JURISDICTIONAL STATEMENT

The government appeals the district court's entry of a preliminary injunction, which went into effect on January 13, 2026. JA341. The district court had jurisdiction under 28 U.S.C. § 1331. JA15. The government filed its notice of appeal on January 6, 2026. JA342. This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1. Whether a court may review a policy providing for the revocation of a group of security clearances without process or individualized review.

2. Whether the district court abused its discretion in granting a preliminary injunction.

## STATEMENT OF THE CASE

### A. The Security Clearance Adjudication Process

Access to classified information is governed by a structured system established through Presidential Executive Orders, government-wide policy directives, and agency regulations. JA17–18, 70–74. These authorities create a uniform framework that balances the need to protect national security with procedural protections for individuals being assessed for eligibility to access classified information. JA72.

3

**1. Relevant Executive Orders**

The modern federal security-clearance framework was established by Executive Order 12968, issued in 1995.  JA70–71.  That order created a "uniform Federal personnel security program" governing eligibility for access to classified information.  JA104.  Executive Order 12968 provides that no employee may be granted access to classified information unless certain conditions are satisfied.  JA104–06.  The order further directs agencies to ensure that access determinations are made only when access is "clearly consistent with the interests of the national security."  JA109.  Eligibility determinations therefore require individualized assessments by trained adjudicative personnel based on the facts concerning the particular individual seeking access.  JA71–72, 109.

Subsequent executive actions have refined the framework.  Executive Order 13467, issued in 2008, designated the Director of National Intelligence (DNI) as the government-wide Security Executive Agent (SEA), responsible for establishing uniform policies governing eligibility for access to classified information across the executive branch.  JA118.  The DNI's supervisory role ensures that clearance investigations and adjudications operate under standardized rules and processes applicable across all federal agencies.  JA72.

4

## 2.  The SEAD-4 Guidelines

Following Executive Order 13467, the DNI issued the National Security Adjudicative Guidelines, now set forth in Security Executive Agent Directive 4 (SEAD-4).   JA122–48.   These guidelines established the "single, common adjudicative criteria" that adjudicators must apply to "all covered individuals" throughout the entire federal government when determining whether an individual may access classified information.   JA122.   The guidelines require trained adjudicators to apply a "whole person" assessment, examining a sufficient period of the individual's life and weighing relevant variables to determine whether granting access would be consistent with national security interests.   JA73–74, 169.   Each case must be evaluated individually on its own merits rather than through categorical or group-based determinations.   JA77.

The SEAD-4 Guidelines identify thirteen areas of conduct relevant to clearance adjudication, including such categories as allegiance to the United States, foreign influence, personal conduct, financial considerations, criminal conduct, the handling of protected information, and others.   JA170–71.   These criteria guide adjudicators in determining whether the individual can be trusted with classified information.

Before a clearance may be granted, the government must conduct a background investigation appropriate to the level of classified information involved.

"[A]ppropriately trained adjudicative personnel" then evaluate the investigative record under the SEAD-4 Guidelines and determine whether granting access to classified information is consistent with national security interests. JA72, 109. This process is highly individualized: adjudicators assess the totality of the evidence relating to a specific applicant and "any doubt shall be resolved in favor of the national security." JA109.

### 3. Process for Denials and Revocations

The executive orders also establish procedural safeguards that apply where an agency denies or revokes an individual's eligibility for access to classified information. Those safeguards include, *inter alia*:

- Being provided with "a comprehensive and detailed written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit";

- Access to "documents, records, and reports upon which a denial or revocation is based";

- A right to be represented by counsel at the individual's own expense;

- A "reasonable opportunity to reply in writing to, and to request a review of, the determination," as well as the "written notice of and reasons for the results of the review"; and

- An opportunity to seek appeal and present evidence through that appeal.

6

JA111.

As explained in an unchallenged expert declaration, JA62, these procedures reflect decades of reforms to the clearance system, dating back to *Greene v. McElroy*, 360 U.S. 474 (1959), and were adopted to ensure that the government's guarding of national security information is governed by fair and consistent processes.  JA74–76.

## B. Factual Background

For more than three decades, Appellee Mark S. Zaid has practiced law in the national security field.  JA13, 42.  His clients' representations routinely require access to sensitive materials.  JA45.  To facilitate access to "cleared counsel," agencies have repeatedly granted Mr. Zaid security clearances and access approvals so that he could properly advise and zealously represent his clients.  JA18–23, 45–46.  Over the course of his career, he passed multiple background investigations and was consistently adjudicated trustworthy under the government's personnel-security procedures.  JA45–46.

On March 22, 2025, the President issued a memorandum (Presidential Memorandum) titled "Rescinding Security Clearances and Access to Classified Information from Specified Individuals" (Presidential Memorandum).  JA85–87.  The Presidential Memorandum declared that it was no longer "in the national interest" for a group of named individuals—including Mr. Zaid—to access classified

information and directed executive agencies to revoke any security clearances they held "*consistent with existing law*." JA85 (emphasis added). Of the people on that list, Mr. Zaid is the only named person to have never worked in the federal government. And he has never served, as many on the list have, as a public official. JA44. In other words, the only time he would have utilized a security clearance would have been in the course of his representation of clients as a private attorney operating through his law firm. JA27, 44–46.

Appellant federal agencies each summarily revoked Mr. Zaid's security clearance shortly after the publication of the Presidential Memorandum. JA89, 91, 93. These actions were taken without any individualized security review or the procedural protections mandated by existing law for individuals facing clearance revocations. As a result, Mr. Zaid was immediately unable to continue to participate in certain active cases for his clients where that participation would have required him to review classified material. JA52–56. He was given no opportunity to contest or appeal the decision, which prevented him from providing any meaningful explanation to his clients about when or how it could be restored. JA299. Worse still, Appellants publicly announced the revocation of Mr. Zaid's clearance and declared that he had "abused public trust for political purposes." JA30, 95.

8

### C. Procedural History

Mr. Zaid filed this action on May 5, 2025. JA5. He challenged the Presidential Memorandum and its implementation as violative of the Administrative Procedure Act, the Due Process Clause, the First and Fifth Amendments, and the Bill of Attainder Clause. JA31–37. On May 21, 2025, Mr. Zaid moved for a preliminary injunction, arguing that he would likely succeed on the merits of his claims, that he faced irreparable harm, and that the balance of equities and public interest favored an injunction. JA6. The government responded by moving to dismiss the complaint, contending that the revocation of Mr. Zaid's security clearance raises a "quintessential political question" that courts cannot review. JA307.

The district court denied the government's motion to dismiss and partially granted Mr. Zaid's motion for a preliminary injunction. JA304–42. Turning first to the question of justiciability, the district court found it "undisputed" that the defendant agencies revoked Mr. Zaid's security clearance "without any of the individualized security assessment they would ordinarily afford." JA311. It further found that the Presidential Memorandum did "not purport to make any national security assessment," failing to "mention national security at all." JA314. The district court thus found that "the government has not conducted any individualized assessment of [Mr.] Zaid's eligibility for a security clearance." JA312.

9

The district court's factual findings led it to reject the government's justiciability argument. It interpreted this Court's precedent to permit review of claims that do not "seek review of discretionary judgments regarding the merits of any particular employee's security clearance." JA313 (quoting *Lee v. Garland*, 120 F.4th 880, 893 (D.C. Cir. 2024) (internal citations and quotation marks omitted)). Because the government summarily revoked Mr. Zaid's clearance "without any individualized assessment," his claims sought only to determine "whether the Constitution or other federal law makes it illegal to deny him the standard, individualized process afforded to others." JA315. Those questions were "legal," not "political," and "declining to consider them would be the very sort of judicial abdication that precedent forbids." JA315–16.

Turning to likelihood of success, the district court found it likely that Mr. Zaid would prevail on his claims for violation of the First Amendment, procedural due process, and the right to counsel. JA316. First, the government did not "meaningfully contest" that its "sole reason" for terminating Mr. Zaid's security clearance was his "representation of whistleblowers and other clients adverse to the government," conduct the First Amendment protects. JA318. The government's proposed alternative explanation for the revocation, "protecting classified information," "appear[ed] nowhere in the presidential memorandum," and was "not credible or supported by the record." JA319. Second, the government impaired Mr.

10

Zaid's liberty interest by stigmatizing him as a "sleazeball" who "abused public trust for political purposes," and by doing so "dramatically imped[ed] his ability to pursue his chosen career," all without providing "any process," much less "sufficient process." JA321, 323. Finally, the summary revocation of Mr. Zaid's clearance violated his clients' Fifth Amendment right to counsel of their choice by preventing him from "zealously representing" them in "pending cases." JA325. The district court again found, on this record, that "the government's sole interest" in the revocation was "retribution against an attorney for representing clients adverse to the government," which was not a "legitimate governmental interest." JA326.

The district court concluded by finding that Mr. Zaid had suffered irreparable harm and that both the balance of equities and the public interest favored an injunction. Mr. Zaid's loss of First Amendment freedoms, the damage to his reputation and standing in the community, and his clients' loss of chosen counsel all constituted irreparable harm. JA327–29. And the countervailing interests the government identified lacked merit. While the government "gesture[d] vaguely at 'national security interests,'" it had not "made any national security assessment concerning Zaid, or even purported to justify the summary revocation on that basis." JA330.

The district court crafted "interim relief tailored to [Mr.] Zaid's particular showing on this record." JA340. It barred the government only from "giving effect

11

to security clearance revocations or denials of access to or the ability to use classified information made pursuant to the March 22, 2025, Presidential Memorandum." JA340–41. It explicitly permitted the government to "suspend[] or revok[e]" Mr. Zaid's "security clearance or access to classified information for reasons independent of the presidential memorandum and pursuant to ordinary agency process and applicable law." JA341. It also delayed its injunction from taking effect as to Mr. Zaid "until January 13, 2026, to provide the government with the opportunity to consider next steps." *Id.* As a result of the district court's injunction, Mr. Zaid's clearance was ultimately restored to the Top-Secret eligibility status he maintained prior to the Presidential Memorandum. JA340–41.

The government noticed its appeal on January 6, 2026. JA342. But it chose not to seek a stay of the district court's injunction. Mr. Zaid's clearance was thus reinstated as of January 13, 2026. At the time of submissions of this brief, he has maintained authorized access to classified information in the course of his ongoing client representations for over two months. In that time, the government has not sought to revoke Mr. Zaid's security clearance or access to classified information for "reasons independent of the presidential memorandum and pursuant to ordinary agency process and applicable law," as the injunction explicitly permits. JA341.

12

## STANDARD OF REVIEW

To "obtain a preliminary injunction, a party 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Media Matters for Am. v. Paxton*, 138 F.4th 563, 573 (D.C. Cir. 2025) (quoting *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727 (D.C. Cir. 2022)). This Court reviews "the District Court's weighing of those factors for abuse of discretion, its legal conclusions de novo, and factual findings for clear error." *Id.* Clear-error review is "highly deferential." *United States v. Hale-Cusanelli*, 3 F.4th 449, 455 (D.C. Cir. 2021). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## SUMMARY OF THE ARGUMENT

The district court correctly held that Mr. Zaid's claims are justiciable and that he satisfied each element of the four-factor test for a preliminary injunction.

I.     This Court has long recognized that courts may review the "constitutionality of the methods used" to determine whether to issue or revoke security clearances. *Greenberg*, 983 F.2d at 290. "The end may be legitimate, its accomplishment may be entrusted solely to the President, yet the judiciary still may properly scrutinize the manner in which the objective is to be achieved." *Id.* Mr.

13

Zaid's claims require review of only procedure—or more precisely, lack of procedure. The "legal" question the district court posed and answered is "whether the Constitution and other federal law makes it illegal to deny [Mr. Zaid] the standard, individualized process afforded to others." JA315.

Appellants urge that this Court cannot review agencies' individualized, predictive judgments that the national security requires revocation of a security clearance. But it is undisputed that Appellants did not conduct any such assessment of Mr. Zaid's eligibility for a security clearance. JA312. The Appellant agencies instead revoked his clearance solely because his name appeared alongside many others in the Presidential Memorandum, which the agencies interpreted to require summary revocation without any process. Mr. Zaid's challenge is thus precisely the kind that this Circuit has long recognized as reviewable. The district court correctly concluded that Mr. Zaid's case did not require it to second-guess any expert national security judgment—none was ever made—and instead asked only whether the denial of *any* process was unlawful. Review of that issue is supported not just by precedent, but also the government's own position in *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), where it argued that "whether the agency had procedures for denying or revoking clearances and whether the procedures were followed" in the revocation of a clearance is squarely reviewable. Brief for Petitioner, *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988), 1987 WL 880362, at *24–25.

14

II.A   Mr. Zaid demonstrated a likelihood of success on three constitutional claims, each of which would independently support an injunction.  First, the district court found that Mr. Zaid would likely prevail on his claim of First Amendment retaliation, because record evidence showed that Appellants' "sole reason" for revoking his security clearance was his "representation of whistleblowers and other clients," activity the First Amendment protects.  JA318.  Appellants' alternative explanation, protection of classified information, was "not credible or supported by the record," because it "appears nowhere in the presidential memorandum" directing the revocation.  *Id.*  Second, the district court correctly found that Appellants' failure to provide any procedure infringed Mr. Zaid's liberty interest in pursuing his chosen career free from unwarranted stigmatization.  This Court's precedent has repeatedly recognized such a liberty interest.  Appellants cannot escape that precedent by invoking non-binding authority addressing narrower interests.  Finally, the district court correctly determined that Mr. Zaid would likely succeed in showing that the summary revocation threated his clients' rights to counsel of their choice, including in ongoing cases regarding classified complaints that Mr. Zaid helped file.

II.B   The record amply supported the district court's finding that Mr. Zaid faced a risk of irreparable harm.  Deprivation of First Amendment rights, even for brief periods, is a recognized form of irreparable harm.  And money damages cannot compensate Mr. Zaid for the extensive damage to his career and reputation.

II.C    Both the balance of the equities and the public interest strongly support a preliminary injunction.  The public has a strong interest in upholding constitutional rights.  While Appellants attempt to invoke national security, the district court found that neither the Presidential Memorandum nor any agency had made a national security assessment.  JA330.  Appellants show no error in that finding.  Absent any record support for the interests Appellants invoke, they cannot overcome Mr. Zaid's specific and concrete showing of irreparable harm.

Ultimately, the injunction entered below simply requires the government to follow the same lawful processes that apply to every other individual to whom it has granted a security clearance.  Mr. Zaid's clearance was restored over two months ago, and he has accessed classified information in support of his clients since that time.  Appellants have sought no stay of that restoration.  Nor have they elected to initiate any of the established processes for revoking Mr. Zaid's clearance, as the preliminary injunction specifically permits them to do.  Appellants' own inaction thus contradicts their repeated invocation of "national security."  The district court acted well within its discretion in granting preliminary relief, and its judgment should be affirmed.

## ARGUMENT

### I.     The District Court Correctly Held that Mr. Zaid's Claims Are Justiciable.

Appellants' efforts to shield their actions from judicial review are unpersuasive. "It is simply not the case that all security-clearance decisions are immune from judicial review." *Greenberg*, 983 F.2d at 289. Though courts cannot second guess the substance of an agency expert's individualized, predictive judgment that the revocation of a particular security clearance is necessary for national security, *Rattigan v. Holder*, 689 F.3d 764, 767 (D.C. Cir. 2012), the district court explicitly found that no such judgment occurred in this case, JA312 ("[T]he court finds the government has not conducted any individualized assessment of Zaid's eligibility for [a] security clearance."). Rather than contesting the merits of an individualized national security assessment, Mr. Zaid challenges a *policy* that deprived him of such an assessment and effectuated the blanket revocation of a group of security clearances without any process. His claims fit comfortably within the category of cases that this Circuit has recognized as justiciable. *See Greenberg*, 983 F.2d at 289–90.

This Circuit has recognized the fundamental principle that "[t]he end may be legitimate, its accomplishment may be entrusted solely to the President, yet the judiciary still may properly scrutinize the manner in which the objective is to be

achieved." *Id.* at 290. Accordingly, this Circuit's security-clearance cases draw a line between (A) challenges to the substance of individualized "expert, predictive judgment[s] made by appropriately trained personnel that *Egan* insulates from judicial review," *Rattigan*, 689 F.3d at 767 (citation and internal quotation marks omitted), and (B) challenges to the policies and procedures underpinning security clearance decisions, which are judicially reviewable, *see Greenberg*, 983 F.2d at 289–90. Contrary to Appellants' assertion, this is not an "illusory distinction." Gov't Br. 11. On numerous occasions, including outside the context of security clearances, this Circuit has expressly asserted its authority to conduct "review of constitutional claims challenging the *process* by which *unreviewable determinations* were reached." *Ralls Corp. v. CFIUS*, 758 F.3d 296, 311 (D.C. Cir. 2014) (emphases added) (citing *Ungar v. Smith*, 667 F.2d 188, 193–96 (D.C. Cir. 1981)); *Ralpho v. Bell*, 569 F.2d 607, 620–22 (D.C. Cir. 1977)); *see also Greenberg*, 983 F.2d at 289– 90.

Appellants repeatedly emphasize the executive branch has exclusive power to determine who meets the requirements for a security clearance. *See* Gov't Br. 13– 17. But as the district court noted, it is "well established that the executive branch's exclusive power to determine *who* satisfies the eligibility criteria for [a] security clearance does not mean it can conduct that determination *however* it wants and free from the Constitution's limits." JA304 (emphases in original). In seeking to erase

18

this distinction, Appellants distort the relevant Supreme Court and D.C. Circuit precedents beyond recognition.

In *Egan*, the Supreme Court held that the Merits Systems Protection Board (MSPB) lacked the statutory authority to review "the *substance* of an underlying decision to deny or revoke a security clearance." 484 U.S. at 520 (emphasis added). The Court reasoned that an individualized determination regarding a security clearance is a "predictive judgment" that "must be made by those with the necessary expertise in protecting classified information," and that the MSPB lacked the ability to "determine what constitutes an acceptable margin of error in assessing the potential risk" regarding concerns of national security. *Id.* at 529.

The plaintiff in *Egan* did not allege that the procedures governing his security-clearance determination were themselves constitutionally deficient. Consequently, the Court embraced the government's argument that under the relevant statute, judicial review by the MSPB was properly "limited to determining whether the required removal procedures had been followed." *Id.* at 523. The Court noted no divergence from those procedures, explaining that the respondent "received notice of the reasons for the proposed denial, an opportunity to inspect all relevant evidence, a right to respond, a written decision, and an opportunity to appeal to the Personnel Security Appeals Board." *Id.* at 533.

19

Less than six months after *Egan*, the Court in *Webster v. Doe*, 486 U.S. 592 (1988), considered whether judicial review was available to a Central Intelligence Agency (CIA) security officer alleging that he was unlawfully terminated on the basis of his sexual orientation. The officer was pressured to resign (and ultimately terminated) upon being told, without further explanation, that his "homosexuality posed a threat to security." *Id.* at 595. The CIA Director purported to "deem[] it necessary and advisable in the interests of the United States to terminate [the officer's] employment," and the officer was informed that if he applied for a job requiring a security clearance, "the [CIA] would inform the prospective employer that it had concluded that [the officer's] homosexuality presented a security threat." *Id.*

The *Webster* Court rejected the government's argument that the officer's challenge was non-justiciable, emphasizing the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quoting *Bowen v. Michigan Acad. of Fam. Physicians,* 476 U.S. 667, 681, n.12 (1986)). The Court noted that it could not ascertain from the complaint "whether [the officer] contends that his termination, based on his homosexuality, is constitutionally impermissible, or whether he asserts that a more pervasive discrimination policy exists." *Id.* On remand, this Circuit reasoned that judicial review would apply to a "blanket policy against hiring

20

homosexuals," but that the officer failed to provide evidence that such a policy existed. *Doe v. Gates*, 981 F.2d 1316, 1319 (D.C. Cir. 1993).

In applying *Egan* and *Webster*, this Circuit has held that even though "the substance of [] a judgment" to revoke or deny a security clearance revocation is non-justiciable, *Lee*, 120 F.4th at 893, courts may review a challenge to the "constitutionality of the *methods* used" to reach security clearance determinations, *Greenberg*, 983 F.2d at 290 (emphasis added). "It is simply not the case that all security-clearance decisions are immune from judicial review." *Greenberg*, 983 F.2d at 289.

*Greenberg* provides the relevant framework for evaluating which challenges are justiciable. *See id.* at 289–90. There, this Circuit held that *Egan* presented no bar to a constitutional challenge alleging that the Department of Defense's security clearance questionnaire violated the Fifth Amendment privilege against self-incrimination. *Id.* The court delineated between the "ends" of security clearance decisions—which are entrusted to the executive branch—and the "means"—which the judiciary may properly scrutinize. *See id.* at 290 (explaining that "[n]o one would suggest the government [] could, despite the Fourth Amendment, conduct random searches without warrants in the hope of uncovering information about employees seeking security clearances.").

21

Mr. Zaid, like the plaintiffs in *Greenberg*, challenges the constitutionality of the means—*i.e.*, a policy prescribing inputs in the security clearance process. He contests the legality of the procedures (or more accurately, the absence thereof) established by the Presidential Memorandum's new policy, as interpreted by the agencies: no notice, no opportunity to be heard, no individualized review, no discretionary expert judgment, and no national security assessment. Contrary to Appellants' contention, reviewing Mr. Zaid's challenge to this policy and its implementation does not "require some judicial scrutiny of the merits of the revocation decision." Gov't Br. 18 (quoting *Perez v. F.B.I.*, 71 F.3d 513, 514 (5th Cir. 1995)). Rather than disputing the merits of an individualized determination regarding whether he is "likely to divulge sensitive information," *Lee*, 120 F.4th at 893, Mr. Zaid contests a blanket policy that resulted in the complete absence of such a judgment.

The district court found that "the government has not conducted any individualized assessment of Zaid's eligibility for [a] security clearance," JA312, and Appellants do not dispute this finding. Mr. Zaid was swept up in a sprawling Presidential Memorandum that revoked the security clearances of a group of the President's perceived political enemies, their lawyers, and their family members. The fact that Mr. Zaid's name was spelled out does not make the revocation of his security clearance any more individualized than if the President had, in a comparable

22

executive order, taken the time to list all the names of the attorneys at Susman Godfrey LLP and the other law firms whose security clearances he purported to suspend. The Memorandum simply listed a group of the President's perceived political enemies without making individualized findings as to any; specifying those within the blast radius did not turn dynamite into a scalpel.

Because of who Mr. Zaid has represented, he was grouped with politicians such as Hillary Clinton, Kamala Harris, and Joe Biden (and unnamed family members), among others.  This was not the type of individualized "sensitive, predictive judgment[]" that *Egan* protects." *Rattigan*, 689 F.3d at 769; *see also Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 143–44 (D.D.C. 2025) ("[W]here the allegation is that a pervasive, class-wide discriminatory policy exists against some group of individuals, the questions involved do not create any need for courts to second-guess experts or weigh unmanageable standards.").

Though Appellants characterize this Court's decision in *Lee* as involving "similar claims alleging due process" violations, Gov't Br. 11, *Lee* did not concern either (1) a challenge to an overarching policy, or (2) a *procedural* due process challenge.  Instead, the appellant in *Lee*—a former FBI employee whose security clearance was revoked after he failed multiple polygraphs and was afforded full administrative due process protections—asserted that the agency's revocation decision in his particular case "rested on 'pretextual and untrue statements'" about

23

his deception in past polygraph exams. 120 F.4th at 894. Lee did not allege that the government had a pattern or practice of discrimination, or that he was deprived of constitutionally adequate notice or the opportunity to be heard. Rather, he specifically "complain[ed] that the government's justification for the revocation was pretextual because the 'blips' noted by [the person conducting] [the third] polygraph 'were not large enough' to indicate deception." *Id.* As the court noted, there were no "judicially manageable standards for resolving" whether the blips were too large. *Id.* Lee's objections were thus unreviewable because they bore "on whether Executive Branch officials had good enough reasons to revoke [his] clearance," *id.*, not on whether he was subjected to an unlawful policy or afforded the constitutional minimum notice and opportunity to be heard. Here, as the district court recognized, "none of Zaid's claims challenge or otherwise ask the court to review an individualized national security determination—to the contrary, they challenge the legality of denying him any such individualized review." JA308.

Appellants' other cases are even further afield. In *Foote v. Moniz*, 751 F.3d 656, 657 (D.C. Cir. 2014), the court found that it lacked the competence to review the "psychological evaluation of a Department psychologist" who "was in the category of officials within the Department of Energy authorized and trained to make a judgment about [plaintiff's] suitability for certification." And in *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999), this Circuit declined to probe the veracity of

24

"the *nondiscriminatory reason proffered*" for denying security clearances—that "the applicants' long residence abroad prevented DOJ from conducting an adequate security clearance background investigation." (emphasis added). In Mr. Zaid's case, the district court found that Appellants have not even proffered a nondiscriminatory reason: "the government does not argue the decision to summarily revoke Zaid's clearance was based on anything other than his prior representations of clients in matters adverse to the government." JA315. Moreover, *Foote* and *Ryan* were nonjusticiable for the specific reason that they asked the court to probe the veracity of well-trained experts' empirical assessments of national security risks. Here, "nothing in the memorandum indicates that it reflects any government official's expert assessment or predictive judgment." JA315.

Further, this Circuit on numerous occasions has recognized that procedural due process challenges like the one raised by Mr. Zaid are justiciable even in arenas where the decisionmaker's ultimate determination is a political question. In *Ralls v. CFIUS*, for example, this Court held that judicial review is available to evaluate the processes that culminate in "non-justiciable . . . determinations," 758 F.3d at 314, such as the President's assessment that a certain transaction "threatens to impair the national security of the United States," *id.* at 311 (citation omitted). The appellant in *Ralls* advanced procedural due process claims that "ask[ed] [the court] to decide whether the Due Process Clause entitle[d] [Ralls] to have notice of, and access to,

the evidence on which the President relied" as well as "an opportunity to rebut that evidence before he reache[d] his non-justiciable (and statutorily unreviewable) determinations." *Id.* at 314. Even though Ralls's claims challenged the procedures informing what was ultimately a political question, the court found that these procedural due process claims were subject to judicial review. It explained, "[w]e think it clear . . . that Ralls's due process claim does not encroach on the prerogative of the political branches, does not require the exercise of non-judicial discretion and is susceptible to judicially manageable standards." *Id.* This Circuit reached similar conclusions in *Ungar*, 667 F.2d at 193–96, and *Ralpho*, 569 F.2d at 620–22, none of which Appellant cites.

Additionally, *Lee* noted that a question of justiciability must be considered "in the light of its nature and posture in the specific case." 120 F.4th at 891. Beyond the fact that *Lee* did not concern a challenge to an unconstitutional policy or the deprivation of procedural due process, it is entirely distinguishable from this case in that the security clearance determination at issue in *Lee* was (1) the product of an expert agency's discretion, and (2) a judgment related to national security. The absence of either of these factors, standing on its own, would be enough to permit judicial review under the reasoning of *Egan*.

As this Circuit recognized in *Lee*, the unavailability of judicial review in *Egan* was premised upon the notion that a security clearance determination "must be made

26

by *those with the necessary expertise* in protecting classified information" and thus "must be committed to the broad *discretion* of the *agency responsible*." *Egan*, 484 U.S. at 529 (emphases added). But here, Appellant agencies interpreted the Presidential Memorandum as depriving them of the necessary discretion to render a security clearance determination. That is because the Presidential Memorandum summarily "direct[ed] every executive department and agency head," "as necessary and consistent with existing law," to "revoke any active security clearances held by the [named] individuals and to immediately rescind their access to classified information." JA27. Under the relevant agencies' interpretation of the Presidential Memorandum, this directive left little room for their "discretion" or "predictive judgments." Consequently, exempting from judicial review this policy of revoking the group of security clearances would be entirely inconsistent with the rationale of expert deference upon which *Egan* and *Lee* are predicated. Judicial review of the Presidential Memorandum and its implementation would not override substantive decisions "made by trained Security Division personnel," which is the only sort of decision the "absolute bar on judicial review covers." *Rattigan*, 689 F.3d at 768.

To be sure, the Presidential Memorandum required the agencies to revoke the named individuals' security clearances "as necessary and consistent with existing law." JA27. But courts, not agencies, must determine what the law requires. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024). Here, the agencies'

27

judgments that the law required summary revocation—no process at all—contradicts both constitutional requirements and longstanding practice. It is not the type of determination to which courts defer. *Lee* and *Egan* recognized that the judiciary should defer to "appropriately trained" national security personnel's "predictive judgments" about an individuals' "future behavior," not judgments about what the law allows. *Egan*, 484 U.S. at 528–29; *Lee*, 120 F.4th at 893.

Moreover, where a challenge does not require a court to make any judgment "as to whether the plaintiff's continued access to classified information was clearly consistent with national security," it can "coexist with *Egan*." *Rattigan*, 689 F.3d at 770. Mr. Zaid's challenge meets that criterion, as he does not ask this Court to render any determination regarding his risk to national security. The Presidential Memorandum directing the revocation of Mr. Zaid's security did not consist of any national security assessment, either of Mr. Zaid or even the group as a whole. Instead, it merely stated that the blanked revocation of Mr. Zaid's security clearance and others was in the "national interest." *See Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 149 (D.D.C. 2025) ("*Lee* references 'national security' 27 times. It references 'national interest' zero times.") As mentioned, the district court emphasized that "the government does not argue the decision to summarily revoke Zaid's clearance was based on anything other than his prior representations of clients in matters adverse to the government." JA315.

28

Because this case does not require the Court to review a national security determination, it is justiciable under *Egan* and *Lee*.

## II. The District Court Correctly Found That Mr. Zaid Will Likely Succeed on the Merits and that the Equities Favor an Injunction.

Mr. Zaid has shown, and the district court correctly concluded, that he is likely to succeed, at a minimum, on his claims that Appellants' summary revocation of his security clearance and access to classified information violated the First Amendment, Fifth Amendment procedural due process, and the Fifth Amendment right to counsel.[1]  JA316.  Because such violations threaten irreparable harm to Mr. Zaid, and Appellants have no legitimate interest in acting illegally, entry of limited preliminary injunction was well within the district court's discretion.

### A. The District Court Correctly Found a Likelihood of Success.

The district court found that Mr. Zaid would likely succeed on his claims that Appellants retaliated in violation of the First Amendment, violated the Fifth Amendment's guarantee of procedural due process, and denied Mr. Zaid's clients' rights to counsel of their choice, in violation of the Fifth Amendment.  Each of these

---

[1] Because Appellants do not address Mr. Zaid's likelihood of success on the merits as to his APA (Count 1), Fifth Amendment Vagueness (Count 4), and Bill of Attainder claims (Count 6)—and because the district court did not directly resolve those claims in deciding the preliminary injunction—Mr. Zaid does not address those claims in responding to Appellants' arguments.  However, the district court found that Mr. Zaid "has plausibly alleged [such] violations" for purposes of surviving dismissal. JA331.  Mr. Zaid does not waive or in any way concede that he is unlikely to prevail on those claims in any future briefing.

three findings independently demonstrates a likelihood of success and supports entry of a preliminary injunction.

1. *Mr. Zaid Will Likely Succeed on His First Amendment Claim (Count Three).*

The district court did not abuse its discretion in holding that Mr. Zaid will likely show that the Presidential Memorandum—and the compulsory penalties it triggers—retaliated against him for exercising his First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I (Petition Clause). "[T]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022). When a "person petitions the government for redress"—e.g., by filing a lawsuit or appearing before an official forum on behalf of a client—the First Amendment categorically "prohibits any sanction on that action … so long as the petition was in good faith." *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009); *see also Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 667 (D.C. Cir. 2005); *Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 793 F.3d 85, 89 (2015) (citing *Nader*).

Before the district court, Appellants did not dispute that Mr. Zaid engaged in protected activity when he "petitioned the government and courts on behalf of whistleblowers and other clients." JA317. Nor did they dispute that the "adverse action here—revoking a person's security clearance—is more than sufficient to

30

constitute retaliatory action." *Id.* The district court had no difficulty finding a causal relationship between the retaliatory action and Mr. Zaid's protected activity. After reviewing the evidence, it found that Mr. Zaid's "representation of whistleblowers and other clients adverse to the government was the *sole reason* for summarily revoking his security clearance." JA318 (emphasis added). Appellants do not address that factual finding at all, much less show clear error.

Appellants raise three arguments on appeal. First, reprising their justiciability argument, they contend that *Lee* prohibits "evaluat[ing] the President's motives," and thus bars consideration of whether the President had a retaliatory motive. Gov't Br. 33. But *Lee* barred only "challenges" to the "substantive basis" of a security decision. 120 F.4th at 895. Here, the district court found that "the government has not conducted any individualized assessment of Zaid's eligibility for security clearance." JA312. Mr. Zaid's claim cannot challenge the "substantive basis" of an assessment that never occurred. The district court correctly found that evidence regarding the decision the President made showed one "sole reason" completely divorced from national security. JA318.

Appellants make no effort to show clear error in the district court's identification of a "sole reason" for the revocation, because the evidence overwhelming supports it. President Trump's public hostility toward Mr. Zaid— labeling him a "disgrace" and a "sleazeball" and even suggesting he be sued for

31

treason—dates back to Mr. Zaid's legal representation of the 2019 Intelligence Community whistleblower. JA46–48, 318. The summary revocation of Mr. Zaid's security clearance occurred "just days after Zaid filed a lawsuit against the government," and "just days apart from several other presidential orders found to be targeting attorneys based on their choice of clients." JA318 (citing the Law Firm cases). That evidence amply supports the district court's finding of a retaliatory motive. Appellants' contention that the district court must blind itself to such evidence, even where no security assessment has occurred, would give the executive branch free rein to retaliate in any matter tangentially relating to a security decision. That cannot be the law.

Second, Appellants argue that "there are obvious non-retaliatory grounds to revoke Plaintiff's security clearance, namely, to protect classified information." Gov't Br. 33–34. But the district court considered that exact explanation and found it "not credible or supported by the record." JA319. The explanation "appears nowhere in the presidential memorandum, which summarily directed agencies to revoke security clearances *without any mention of concerns related to protecting classified information*." *Id.* (emphasis added). The district court noted, "the government does not meaningfully rebut that the decision to deny this attorney the usual process was based on his prior legal work for clients adverse to the

32

government." JA303. This Court cannot disturb those factual findings absent clear error. Appellants ignore them, because they have no response.

Appellants contend that "access to classified information involves an *affirmative finding* that someone should be entrusted with such access," citing *Egan*, 484 U.S. at 527 (emphasis added), and that the President, in order to safeguard our nation's secrets, "is well within his rights to limit someone's access if *he determines* that they do not meet the affirmative criteria for such access." Gov't Br. 34 (emphasis added). But the government made an "*affirmative finding*" that Mr. Zaid could be "entrusted" to review classified information for "the past three decades." JA305. And the district court correctly found that the Presidential Memorandum revoked that past finding without any assessment of the relevant criteria. JA314. This sweeping deprivation, with one stroke of the pen, resulted entirely without the "due process" of advance notice or a fair chance for Mr. Zaid (and the others grouped with him) to defend against the accusations, and the revocation occurred without any procedure or methods "consistent with existing law" as set forth in the Presidential Memorandum. JA52 (¶38).

Finally, Appellants urge that the "Government's 'legitimate interests … deferentially viewed, outweigh the free speech interests at stake.'" Gov't Br. 34–35. But the district court found that the "government's sole interest was retribution against an attorney for representing clients adverse to the government," which was

33

not a "legitimate governmental interest."  JA326.  It did not "second-guess" the "President's legitimate interest in protecting our nation's classified information." *Contra* Gov't Br. 34; *see also* Gov't Br. 23, 27.  It found, based on its review of the evidence, that the Presidential Memorandum did not contain "any mention of concerns related to protecting classified information," such that those concerns "were not at play here."  JA319.  Appellants identify no error, much less clear error in that finding, which supports the district court's conclusion that Mr. Zaid will succeed on the merits of his First Amendment claim.

### 2. *Mr. Zaid Will Likely Succeed on His Fifth Amendment Procedural Due Process Claim (Count Two).*

The Fifth Amendment's Due Process Clause guarantees that the government cannot take away a person's life, liberty, or property without following fair legal procedures.  This Court applies a familiar two-part inquiry, first asking whether Mr. Zaid was deprived of a protected interest (here, a liberty interest), and, if he was, what process was he due.  *See* Gov't Br. 36 (citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023)).  Appellants did not dispute below that Mr. Zaid was not "afforded any process before his clearance was revoked."  JA323.  The sole dispute thus concerns whether Mr. Zaid has asserted a protectible liberty interest.

The district court correctly found that Mr. Zaid would likely succeed in proving that the government infringed his liberty interest by "both alter[ring] his status and stigmatiz[ing] his reputation."  JA320; *see Doe v. Cheney*, 885 F.2d 898,

910 (D.C. Cir. 1989) ("To succeed, Doe must make out a case that NSA both altered his status and stigmatized his reputation."). The district court found that the Presidential Memorandum alters Mr. Zaid's status by depriving him of his ability to continue his chosen profession. JA320–21. And Appellants have stigmatized Mr. Zaid by maligning him as a "sleazeball" who committed "treason" and "abused public trust for political purposes." JA321 (citations omitted). The evidence before the district court supported both findings.

This Circuit has previously found "that a liberty interest is implicated where government action changes a plaintiff's status, including by excluding him from 'employment opportunities' or precluding him from pursuing his 'chosen career.'" JA320 (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527–28 (D.C. Cir. 1994)); *see also Greene v. McElroy*, 360 U.S. 474, 492 (1959) (revocation of a security clearance possibly implicates Fifth Amendment liberty interest where action "has seriously affected, if not destroyed, [plaintiff's] ability to obtain employment in the aeronautics field"). Here, the unconstitutional summary revocation of Mr. Zaid's security clearance and classified access excludes him from representing government and private clients whose cases involve classified information. JA55–56 (¶¶44–46). As the district court found, "Zaid's practice relates to military, intelligence, and law enforcement." JA305. "[G]iving competent advice requires him to access, review, and discuss classified material." *Id.* No lawyer could ethically or zealously "still

35

practice law" or "argue in court" for a client in a lawsuit without reviewing the underlying complaint or the discovery necessary to analyze his case.[2]  By neutering his ability to represent clients whose cases involve classified issues, Appellants' actions also have the "broad effect of largely precluding" Mr. Zaid from continuing his decades-long cultivation of a successful career in national security law. *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998).

Appellants do not dispute that *Kartseva* and *O'Donnell* are binding Circuit precedent recognizing a liberty interest in pursuing one's chosen career.  Instead, they urge that other Circuits have found that "an individual 'does not have a constitutional … liberty interest in his security clearance.'"  Gov't Br. 36–37 (quoting *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988), and citing Third, Fourth, Eighth, Ninth, and Federal Circuit cases).  But the district court did not invoke a liberty interest in Mr. Zaid's security clearance, specifically.  It invoked a liberty interest in his "chosen career," as this Court's precedent permits.  JA321.

Most out-of-Circuit precedent Appellants cite does not hold that individuals possess no liberty interest in their chosen careers.  Each case is factually

---

[2] *See* D.C. R. Prof'l Conduct l.3(a) (requiring lawyers to "represent a client zealously and diligently within the bounds of the law") *and* D.C.R. Prof'l Conduct 1.3, cmt. [1] ("The duty of a lawyer, both to the client and to the legal system, is to represent the client zealously within the bounds of the law, including the Rules of Professional Conduct and other enforceable professional regulations, such as agency regulations applicable to lawyers practicing before the agency.").

distinguishable from the circumstances Mr. Zaid faces.  In *Hill*, the Tenth Circuit rejected the argument that the Air Force's adoption of certain procedures for suspending and revoking security clearances created an expectation that such procedures would be followed.  844 F.2d at 1411.[3]  In *Jones v. Dep't of Navy*, 978 F.2d 1223 (Fed. Cir. 1992), and other cases, courts found that clearance suspensions do not implicate liberty interests because they do not pass "judgment on an individual's character."  *Id.* at 1226, Gov't Br. 36; *see Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1208 (4th Cir. 1990) (same); *see also El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 179 (3d Cir. 2010) (citing *Jamil*).  Mr. Zaid does not argue, and the district court did not find, that the revocation of his security clearance alone stigmatizes him.  JA322–23.  The government engaged in other, independent conduct that, when combined with the revocation, purported to impugn his character.  *See infra* pp. 45–48.

Only the Ninth Circuit, in *Dorfmont v. Brown,* 913 F.2d 1399 (9th Cir. 1990), has held that "there is no liberty interest in employment requiring [a security] clearance."  *Id.* at 1403.  But that holding contradicts this Court's precedent, which recognizes that employment changes following revocation of a security clearance

---

[3] Furthermore, Hill's removal from his position for *misconduct* was an intervening, dispositive factor, rendering it unnecessary to decide whether the Air Force could be ordered to complete its adjudication of the clearance *suspension*.  844 F.2d at 1412–13.

can constitute a "'paradigmatic' status change" and meet "the first part of the test for violations of a liberty interest." *Cheney*, 885 F.2d at 910. This Court is "bound to follow circuit precedent." *Kennedy v. Comm'r of Internal Revenue*, 142 F.4th 769, 782 (D.C. Cir. 2025).[4] And *Dorfmont*'s analysis is unpersuasive. Even if most individuals do not have a specific liberty interest in their security clearance alone, the revocation of a clearance, when combined with other circumstances, can effect a broader "status change" that does implicate liberty interests. *Cheney*, 885 F.2d at 910. This Court frequently distinguishes between government action that affects only "one position" and action that broadly precludes "pursuing [one's] profession." *Kartseva*, 37 F.3d at 1529.

The facts the district court found underscore the broad harm to Mr. Zaid's ability to pursue his chosen career. The government's action has "interfered with Zaid's ongoing attorney-client relationships," prevented him from accessing a "whistleblower complaint he helped his client file," and required him to "turn[] down numerous clients who have approached him for representation." JA320. Altering Mr. Zaid's employment status and precluding him from pursuing his chosen career in the field of national security law is exactly what is at stake here, if his

---

[4] Appellants suggest that the relevant language from *Cheney* was dictum, because the Court later held that "plaintiff was accorded due process." Gov't Br. 38. But *Cheney* analyzed the plaintiff's liberty interest under the same test the district court applied below. 885 F.2d at 910. And even if that application were not binding, neither is *Dorfmont*.

clearance is allowed to be summarily revoked, without procedures required by law. *See Doe v. Casey*, 796 F.2d 1508, 1523 (D.C. Cir. 1986) (change in status includes "foreclosing the employee's future employment opportunities"), *aff'd in part, rev'd in part sub nom. Webster v. Doe*, 486 U.S. 592 (1988). As such, the Presidential Memorandum has effected an unconstitutional "change in status" that implicates a liberty interest. *Kartseva*, 37 F.3d at 1527; *Casey*, 796 F.2d at 1523.

Appellants resist the district court's findings, arguing that Mr. Zaid's "loss of access to national security information" does not constitute a change of "status" under *Egan*, *Lee*, and *Cheney*. Gov't Br. 39. But the evidence supported the district court's determination, and Appellants do not identify any clear error. Mr. Zaid's reliance on his clearance, and access to classified information on behalf of his clients, is central to carrying out his professional duties, just as it was for the federal employee in *Cheney* where the court recognized that such an interest existed and that such a professional requirement deserves legal protection. This makes sense, as "[t]he Constitution protects an individual's 'right to follow a chosen trade or profession' without governmental interference." *O'Donnell*, 148 F.3d at 1141. Mr. Zaid requires his security clearance to continue practicing in the highly specialized legal field he has chosen for decades (which includes litigating security clearance adjudication cases). JA18–24, JA30 (¶54), JA328. Appellants downplay any deprivation by claiming Mr. Zaid "still has his job" and that revoking a clearance

does not implicate any "'[l]oss of present or future government employment.'" Gov't Br. 39 (quoting and citing *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1111 (D.C. Cir. 1985)). That Mr. Zaid may still practice some kind of law and argue in court on other types of cases—without his clearance and classified access—rings hollow. Clients seek out Mr. Zaid for his specialized experience, not because he could learn to write wills or litigate contractual breaches.

The district court also correctly found that Appellants' "stigmatization of [Mr. Zaid's] reputation … goes beyond revocation of the security clearance itself." JA321. Mr. Zaid's case satisfies all the elements of a "reputation-plus" liberty interest, the deprivation of which also required due process. A reputation-plus claim exists "when the government takes certain adverse actions *and* defames the plaintiff." *Campbell v. District of Columbia*, 894 F.3d 281, 284 (D.C. Cir. 2018) (emphasis in original). Here, the government not only revoked Mr. Zaid's security clearance without any legal process, but also labeled him a threat to the "national interest" and publicly accused him (via social media and ODNI press releases) of belonging to a group "who abused public trust for political purposes," without any explanation of what that means. JA30, JA83, JA95, JA97. That is a textbook case of reputation-plus injury. The highly publicized nature of the Presidential Memorandum and Appellants' subsequent adverse actions have jeopardized Mr. Zaid's liberty interest by directly impugning his "good name, reputation, honor, or

40

integrity." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (considering posters that barred alcohol sales to specified individuals). When the government inflicts such stigma, "notice and an opportunity to be heard are essential." *Id.*

Despite the government's best assertions to the contrary, the President and other agency heads' public statements about Mr. Zaid in support of revoking his clearance *do not* "fall short of the stigma found in other cases." Gov't Br. 42. Just the opposite in fact. Never before has the revocation of an individual's security clearance been nationally publicized in such a cavalier, mocking, and degrading fashion. *See* JA24–26 (¶¶36, 37, 41, 42), JA30 (¶¶52–53) (describing the President's comments that Mr. Zaid is a "sleazeball" who committed "treason" and Director Gabbard's boasting proclamations of the revocation, including laughing about it during a highly publicized interview posted on the Internet). The district court properly concluded that Mr. Zaid has shown stigmatization of his reputation that goes beyond revocation of the security clearance itself. Appellants' attacks on Mr. Zaid's "good name, reputation, honor, [and] integrity" required "notice and an opportunity to be heard." *Wisconsin*, 400 U.S. at 437. Appellants provided no such procedures here, and the district court correctly concluded that Mr. Zaid will likely prevail on his procedural due process claim.

3. *Mr. Zaid Will Likely Succeed On His Fifth Amendment Right to Counsel Claim (Count Five).*

The right to counsel of choice "is the foundation for our adversary system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). By deliberately preventing Mr. Zaid from representing current and future whistleblowers whose cases involve classified information and by interfering with a client's right to work with their specifically chosen cleared lawyer, the Presidential Memorandum creates constitutional crises under both the Fifth and Sixth Amendments. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). As the Supreme Court explained, this right "to counsel of choice," *id.* at 146, is "the root meaning of the constitutional guarantee" to counsel protected by the Sixth Amendment. *Id.* at 147–48 ("Deprivation of the right [to counsel of choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.").[5]

Mr. Zaid possesses the legal authority to challenge these restrictions not just for himself, but on behalf of his clients. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989); *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990). This is because Appellants' actions do more than just inconvenience the

---

[5] Furthermore, Mr. Zaid has the legal standing to defend these First Amendment rights not only for himself but also for his clients, given the special nature of the attorney-client relationship. *Kowalski v. Tesmer*, 543 U.S. 125, 130–31 (2004).

client; they strip them of their right to the counsel of their choice and simultaneously prevent Mr. Zaid from fulfilling his professional and ethical duties to represent them effectively and zealously. *Powell v. State of Ala.*, 287 U.S. 45, 68–69 (1932) (a client's due process rights are meaningless if they do not also include "a right to be heard by counsel"); *see also Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 872 (D.C. Cir. 1984) (discussing the potential danger of allowing "an executive agency that is, in significant respects, the adverse party" effectively to have veto power over one's choice of an attorney).

Mr. Zaid currently represents clients amidst their own legal battles to protect their federal jobs and due process rights. The government claims Mr. Zaid "can still represent any and all clients he wishes," Gov't Br. 44, but in reality, the government has placed Mr. Zaid in an impossible ethical position: they have ordered him to ignore classified information he already legally knows, effectively preventing him from providing competent legal advice. JA54–55 (¶¶43–44). And while a civil litigant may not always have a constitutional right to *appointed* counsel, Appellants' effective severance of active attorney-client relationships for *chosen* counsel is still an egregious violation of due process rights. *Powell*, 287 U.S. at 69. By rendering Mr. Zaid's counsel ineffective in his active cases, Appellants are not just targeting him; they are also stripping his clients of their constitutional right to meaningfully be heard.

Appellants also lump together "any current or future clients" who wish to retain counsel with cleared status, Gov't Br. 44, as if they are all the same. But Appellants ignore that by stripping Mr. Zaid of his security clearance and access to classified material without any due process, it has forced his current clients in certain matters pending against the government to continue their cases without the counsel they specifically chose, or with him severely limited in his ability to represent them. JA54 (¶43), JA61 (¶¶16–17). This is more than a procedural error; it is an abuse of power designed to kneecap legal adversaries in the middle of active litigation, often challenging the actions of the same branch which has improperly acted to weaken or undermine the attorney bringing that very challenge. Appellants' suggestion that this injury is harmless (or cured) because Mr. Zaid's clients can proceed with "other co-counsel" or "retain any other cleared counsel," Gov't Br. 44, ignores the Fifth Amendment's very foundation that you are entitled to the counsel *of your choice*. And the government cannot take actions that warp the legal system by preventing attorneys from fulfilling their traditional roles as advocates or by shielding the government's own actions from judicial challenge. *Legal Svcs. Corp. v. Velazquez*, 531 U.S. 533, 537–49 (2001).

Appellants also claim that there is typically "no right to access classified information in civil cases." Gov't Br. 46. Not so. Courts in this Circuit have previously opined that they have "discretion to order disclosure of classified

44

information to the Court in a civil case where the information is material" to resolve a dispute and in the interests of justice. *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 104 (D.D.C. 2012) (Mr. Zaid representing plaintiff); *see also In re Sealed Case*, 494 F.3d 139, 154 (D.C. Cir. 2007) (noting that in a civil case, nothing "forecloses a determination by the district court that some of the protective measures in CIPA, 18 U.S.C. app. III, . . . would be appropriate" to facilitate parties needing to access classified information). In fact, in the course of litigating civil national security cases, Mr. Zaid has regularly sought access to classified information, with the DOJ's Security Office often acting as his sponsor.

Appellants' retributive actions have thus constructively severed established attorney-client relationships, stripping Mr. Zaid's clients of the experienced and zealous advocate they chose to represent them. Because Appellants failed to provide any valid justification for this interference—and has shown a reckless disregard for the due process rights required before rescinding counsel's clearance status—it has directly violated the Fifth Amendment's right to counsel guarantee.

### B. The District Court Correctly Determined That Mr. Zaid Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief.

Prior to reinstatement of his security clearance on January 13, 2026, the harm Mr. Zaid faced met the standard of being "both certain and great"—it is a concrete, existing reality rather than a speculative or future possibility. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Furthermore, the

45

damage is "beyond remediation," meaning that absent court intervention, no later legal victory or financial award can truly undo the harm to Mr. Zaid. Without an immediate preliminary injunction to stop the government's illegal conduct, Mr. Zaid will continue to suffer these severe and irreversible losses.

The government's contention that any harm Mr. Zaid would suffer in the absence of this preliminary injunction "is too remote and speculative to justify supplanting the Executive Branch's authority to safeguard classified information," Gov't Br. 47, is unavailing on at least three bases. *First*, losing fundamental First Amendment rights—such as the freedom to speak, to associate with others, or to petition the courts—is legally recognized as an "irreparable injury," even if the deprivation lasts only brief periods of time. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). As the record below set out, under the Presidential Memorandum, both Mr. Zaid and his clients have experienced this immediate and ongoing violation of their constitutional freedoms.[6]    JA55

---

[6] The government contends, without offering any support, that "purported interference with a third party's right to chosen counsel cannot be a basis for a finding of irreparable injury to the plaintiff." Gov't Br. 50. Yet, as explained above, the deprivation of constitutional freedoms undoubtedly constitutes irreparable injury. *Mills*, 571 F.3d at 1312.

(discussing Mr. Zaid's lost ability to fulfill his attorney-client responsibility; to access classified information; to meet with Congressional oversight committees); JA61 (¶16); JA328 ("Zaid has introduced credible evidence that he cannot properly advise current clients because he is precluded from accessing classified material and using classified information, including information that he learned in the course of the representations.").

*Second*, this Circuit has recognized that economic losses can amount to "irreparable harm" if it threatens the very existence of movant's business. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977)). However, even if a business is not facing total collapse, significant economic injury still qualifies as irreparable harm if there is no way to recover that money or receive adequate compensation later. *In re NTE Conn., LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022). In such instances, because the money is effectively "irretrievable," the injury is considered permanent and justifies immediate court intervention.

And *third*, damage to a person's reputation and professional standing can also constitute "irreparable harm" because its true cost cannot be easily measured in monetary terms. 11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2948.1 (3d ed. 2013 & 2015 Supp.). Using the immense influence of the White House and other executive agencies, the government has tarnished Mr. Zaid's reputation as a best-in-

47

class national security attorney. Critically for Mr. Zaid, for the remainder of his career, he will be required to disclose the revocation on any future SF-86 (National Security Questionnaire) and security clearance applications. JA56 (¶47), JA204–06. Put simply, Appellants' actions have created a barrier that will unfavorably impact Mr. Zaid's ability to hold a security clearance for the duration of his professional life.

By publicly branding him untrustworthy to handle classified material—without giving him any (let alone a fair) opportunity and process to defend himself and to be heard—they have caused him irreparable harm. *See Armour & Co. v. Freeman*, 304 F.2d 404, 406 (D.C. Cir. 1962). Even if the Presidential Memorandum is rescinded someday, the damage would persist; for the rest of his career, Mr. Zaid would be forced to disclose this revocation on every future security clearance application, creating a permanent "black mark" on his professional record. JA56, JA78–79 (¶43). In the specialized field of national security law, these kinds of administrative hurdles are not merely inconvenient; they can be career-ending, effectively blacklisting an attorney from the very work they are trained to perform.

### C. The District Court Correctly Concluded the Balance Of Equities and the Public Interest Strongly Favor Granting Mr. Zaid's Preliminary Injunction.

The district court correctly determined that the balance of harms and the public interest here weigh strongly in favor of granting a preliminary injunction.

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (explaining the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief"). Appellants have argued nothing new that disturbs or upends that balance.

When preliminary injunctive relief is sought against the government, the balance of the equities and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Appellants contend restoring Mr. Zaid's constitutional rights—an experienced national security attorney recognized for protecting whistleblowers and pushing back against government misconduct—is somehow a threat to the public interest and "weighs heavily against" the balance of legal equities. Gov't Br. 47. Yet Appellants rely on their repeated logical fallacy: falsely framing this suit as a challenge to a specific "national security" judgment by the President rather than a challenge to the lack of (and illegal) process used when carried out by multiple federal agencies. By disguising this case as being about "protecting the Nation's secrets," Gov't Br. 47, Appellants try to hide behind "national-security interests" and "separation-of-powers" concerns to avoid accountability for its unconstitutional summary revocation of Mr. Zaid's clearance. Gov't Br. 48. Of course, "national security" was never the stated justification for revoking Mr. Zaid's clearance in the Presidential Memorandum—it was an undefined *national interest*, "which courts have consistently recognized as distinct from and more nebulous than a particular

determination about *national security*." JA314 (emphasis added).  Notably, Mr. Zaid apparently posed neither a "national security" or "national interest" threat during the first Trump Administration, which never initiated any investigation, suspension, revocation, denial, or any other adverse action regarding his security clearance, even though that is when his representation of the Intelligence Community whistleblower took place.  JA48 (¶27).  Mr. Zaid's access level was even increased to Top Secret/Sensitive Compartmented Information ("TS/SCI") in 2020—a higher security clearance level than he held in 2019 while representing the Intelligence Community whistleblower—and he continued to utilize the SCI component of his clearance, unquestioned and uninterrupted, on his  cases up through November 2024.[7] JA25 (¶38).  Any suggestion that "there are obvious non-retaliatory grounds to revoke [Mr. Zaid]'s security clearance," Gov't Br. 33–34, and suddenly claiming it was done under the guise of "protect[ing] classified information"—after Mr. Zaid was adjudicated trustworthy multiple times by several agencies over the past 25 years (JA46)—defies credibility.

Regardless of some vague, imprecise "national interest" determination cited, full and due process was still required of the relevant government agencies.  The cases Appellants cite, *Hamilton v. Transp. Sec. Admin*, 240 F. Supp. 3d 203, 206

---

[7] Mr. Zaid's Top Secret clearance access continued uninterrupted through the time of Appellants' unconstitutional summary revocation in March 2025.  He was read off his SCI access as part of the normal process unrelated to any issue in this matter.

(D.D.C. 2016) and *Trump v. Hawaii*, 585 U.S. 667, 704 (2018), Gov't Br. 48, are of no moment where the government did not afford the individual *any* of the processes and procedures owed. As demonstrated, this case is strictly about the legality of the methods and procedures used, and specifically, judicial review of an agency's refusal to follow its own processes. JA14 ("This case is about methods and process. More specifically, there were no methods and there was no process."). There is always a "substantial public interest" in ensuring that the government abides by the law. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Ultimately, the public interest is best served by preventing the Appellant agencies from acting unconstitutionally, as enforcing an illegal or unconstitutional directive "is always contrary to the public interest." *Gordon*, 721 F.3d at 653.

Appellants also insist that the "public interest in protecting the Nation's secrets is vast," Gov't Br. 47, and "courts should be extremely reluctant to enter a preliminary injunction that 'jeopardiz[es] national security.'" *Id.* at 49 (quoting *Winter*, 555 U.S. at 33). But this argument, as the district court noted, "does not rebut Zaid's showing of irreparable harm." JA329. Mr. Zaid has demonstrated the irreparable harm that would result to him absent enjoining Appellants' summary revocation—both in the form of personal constitutional deprivations as well as harm to his professional reputation and his ability to obtain a clearance in the future, which includes accusations of disloyalty "from the nation's highest offices that directly

51

threaten his standing as a national security lawyer." JA327–28. If the public interests at stake are as "massive" as Appellants now claim, Gov't Br. 49, then they should have ensured the appropriate processes and procedures were undertaken here. Moreover, in the two months since the preliminary injunction was issued, the government has not sought to revoke Mr. Zaid's security clearance or access to classified information for "reasons independent of the presidential memorandum and pursuant to ordinary agency process and applicable law," even though the injunction explicitly permits it do so. JA341. This fact alone fatally undercuts any argument that the government believes there is an urgent national security need to prevent Mr. Zaid from accessing classified information. As such, enjoining the unconstitutional Presidential Memorandum from taking effect as to Mr. Zaid was the only appropriate remedy here.

In this instance, Mr. Zaid, his current clients, and his prospective clients within the national security community each have a strong interest in protecting the bedrock constitutional guarantees of the First and Fifth Amendments. The public interest has been and will continue to be served by an injunction that refuses to countenance retributive attacks by Appellants against an experienced, vigorous, and zealous attorney simply for doing his job.

## CONCLUSION

For the foregoing reasons, the district court's order should be affirmed.

Dated: March 20, 2026

Respectfully Submitted,

*/s/ Abbe David Lowell*
Abbe David Lowell
Caleb Hayes-Deats
David A. Kolansky
Isabella M. Oishi
John P. Bolen
LOWELL & ASSOCIATES, PLLC
1250 H Street, NW, Suite 250
Washington, DC 20005
Tel: (202) 964-6110
Fax: (202) 964-6116
alowellpublicoutreach@lowellandassociates.com

*/s/ Margaret M. Donovan*
Margaret M. Donovan
KOSKOFF, KOSKOFF & BIEDER, PC
350 Fairfield Ave., Suite 501

Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com

*/s/ Norman L. Eisen*
Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, SE, #15180
Washington, D.C. 20003
Tel: (202) 594-9958
norman@statedemocracydefenders.org

*Counsel for Plaintiff-Appellee Mark S. Zaid*

53

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) (together with Circuit Rule 32(a)(7)(B)) because it consists of 12,022 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) (together with Circuit Rules 32(a)(5) and 32(a)(6)) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word's 14-point Times New Roman font.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the CM/ECF system.  Counsel in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

_/s/ Abbe David Lowell_
Abbe David Lowell