No. 26-5009
ORAL ARGUMENT 14 MAY 2026

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

_____

MARK ZAID,

*Plaintiff-Appellee*,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,

*Defendant-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:25-cv-01365 (Amir H. Ali, J.)

_____

**BRIEF FOR *AMICI CURIAE* NATIONAL SECURITY COUNSELORS, COMPASS ROSE LEGAL GROUP, AND THE LAW OFFICE OF DANIEL L. ELLIS IN SUPPORT OF AFFIRMANCE**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for* Amici Curiae

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Amici respectfully submit this certificate as to parties, rulings, and related cases:

## I.      Parties and Amici

The parties to this case are the Appellants Executive Office of the President, Central Intelligence Agency, Defense Counterintelligence and Security Agency, Office of the Director of National Intelligence, Department of Defense, and the United States and the Appellee Mark Zaid.

Amici appearing before this Court are the American Civil Liberties Union; the American Civil Liberties Union of the District of Columbia; the Bar Association of the District of Columbia; Compass Rose Legal Group, PLLC; the Electronic Frontier Foundation; the Hispanic Bar Association of the District of Columbia; the Knight First Amendment Institute at Columbia University; the Law Office of Daniel L. Ellis, PLLC; the Metropolitan Washington Employment Lawyers Association; the National Bar Association; National Security Counselors, Inc.; the Rutherford Institute; the Trial Lawyers Association of Metropolitan Washington, DC; the Washington Bar Association, Inc.; the Washington Council of Lawyers; and the Women's Bar Association of the District of Columbia, as well as Former Officers and Governors of the District of Columbia Bar; Former Senior

Executive Staff of the District of Columbia Bar; Past Presidents of the District of Columbia Bar; and Past Presidents of Voluntary Bars.

## II.    Rulings Under Review

Appellant seeks review of the Memorandum Opinion issued by Judge Amir H. Ali on 23 December 2025.

## III.    Related Cases

The following cases are currently pending before this Court: *Perkins Coie LLP v. DOJ*, No. 25-5241 (D.C. Cir.); *Jenner & Block LLP v. DOJ*, No. 25-5265 (D.C. Cir.); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, No. 25-5277 (D.C. Cir.); and *Susman Godfrey LLP v. Exec. Off. of the President*, No. 25-5310 (D.C. Cir.).

Date:  March 27, 2026        /s/ Kelly B. McClanahan
                                  Kelly B. McClanahan, Esq.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

No publicly-held corporation holds an interest of 10% or more in National Security Counselors, Compass Rose Legal Group, or the Law Office of Daniel L. Ellis. There are no parent companies, subsidiaries, or affiliates of these corporations with any outstanding securities in the hands of the public.

Date: March 27, 2026

                         /s/ Kelly B. McClanahan
                         Kelly B. McClanahan, Esq.
                         *Counsel for Amici*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .... i

CORPORATE DISCLOSURE STATEMENT ................................................. ii

TABLE OF CONTENTS................................................................................. iii

TABLE OF AUTHORITIES ........................................................................ iv

GLOSSARY.................................................................................................. vii

SUMMARY OF ARGUMENT ..................................................................... 1

ARGUMENT .................................................................................................. 2

    I.    *AMICI CURIAE*.................................................................. 2

    II.    *EGAN* IS NOT A CATEGORICAL BAN ON JUDICIAL REVIEW OF ALL MATTERS TOUCHING NATIONAL SECURITY ................................................................ 4

    III.    *EGAN* IS NOT A CATEGORICAL BAN ON JUDICIAL REVIEW OF ALL ADVERSE SECURITY CLEARANCE DETERMINATIONS.................................................... 7

    IV.    THIS CASE DOES NOT FIT INTO THE MAJORITY MODEL, AND THEREFORE *EGAN* DOES NOT APPLY ....... 14

CONCLUSION .................................................................................... 16

CERTIFICATE OF COMPLIANCE.................................................. 17

CERTIFICATE OF SERVICE ........................................................ 17

# **TABLE OF AUTHORITIES**

**Cases:**                                                                                                        **Pages**

*Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990) ... ......... .......... ......... ......... 8

*Armstrong v. Manzo*, 380 U.S. 545 (1965).... ......... ......... ......... ......... 7

*Baker v. Carr*, 369 U.S. 186 (1962).... ......... ......... ......... ......... ......... 4

*Bas v. Tingy*, 4 U.S. 37 (1800).. ......... ......... ......... ......... ......... 5

*Campbell v. McCarthy*, 952 F.3d 193 (4th Cir. 2020)....... .......... ......... ......... 12

*Department of the Navy v. Egan*, 484 U.S. 518 (1988)..... .......... ...........1, 8, 9

*Dubuque v. Boeing Co.*, 917 F.3d 666 (8th Cir. 2019)...... .......... ......... ......... 11

*Dyer v. Dep't of the Air Force*, 971 F.3d 1377 (Fed. Cir. 2020).. .........…..9, 11

*El-Ganayni v. DOE*, No. 08-881, 2008 U.S. Dist. LEXIS 88243 (W.D. Pa. Oct. 31, 2008) ........ ......... ......... ......... ......... ......... ......... ......... 6

*El-Ganayni v. DOE*, 591 F.3d 176 (3d Cir. 2010)... ......... .......... ......... ......... 6

*Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020) ........ ......... .......... ......... ......... 5

*Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973)........ 8

*\*Foote v. Moniz*, 751 F.3d 656 (D.C. Cir. 2014)..... ......... .......... .........…..9, 11

*Hale v. Johnson*, 845 F.3d 224 (6th Cir. 2016) ........ ......... .......... ......... ......... 11

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003)......... ......... .......... ......... ......... 12

*Kaplan v. Conyers*, 733 F.3d 1148 (Fed. Cir. 2013) ......... .......... ......... ......... 12

*Lee v. Garland*, 12 F.4th 880 (D.C. Cir. 2024)........ ......... .......... ......... ......... 13

*Little v. Barreme*, 6 U.S. (2 Cr.) 169 (1804).. ......... ......... ......... ......... 5

*Makky v. Chertoff*, 541 F.3d 205 (3d Cir. 2008)...... ......... .......... .......... ......... 11

*Mass. v. HHS*, 727 F. Supp. 35 (D. Mass. 1989)..... ......... .......... ......... ......... 8

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ... ......... .......... .......... ......... 7

*Natural Res. Def. Council v. Winter*, 527 F. Supp. 2d 1216 (C.D. Cal. 2008). 5

*N.Y. Times v. CIA*, 965 F.3d 109 (2d Cir. 2020)...... ......... .......... .......... ......... 5

*Rafeedie v. INS*, 688 F. Supp. 729 (D.D.C. 1988) ... ......... .......... ......... ......... 6

*\*Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012)......... …….9, 10, 11, 15, 16

*Sanchez v. DOE*, 870 F.3d 1185 (10th Cir. 2017) ... ......... .......... ......... ......... 11

*Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003) ...... ......... .......... ......... ......... 7

*\*Stillman v. DOD*, 209 F. Supp. 2d 185 (D.D.C. 2002) .... .......... ......... ......... 7

*Talbot v. Seeman*, 5 U.S. 1 (1801) ...... .......... ......... ......... ......... ......... ......... 5

*Teufel v. Dep't of the Army*, 608 F. App'x 705 (10th Cir. 2015) . ......... ......... 6

*\*Toy v. Holder*, 714 F.3d 881 (5th Cir. 2013) ......... ......... .......... .........9, 10, 15

*United States v. Amer. Tel. & Tel. Co.*, 567 F.2d 121 (D.C. Cir. 1977). ......... 4

*United States v. Fernandez*, 887 F.2d 465 (9th Cir. 2017) .......... ......... ......... 5

*United States v. U.S. Dist. Court*, 407 U.S. 297 (1972) .... .......... ......... ......... 4

*Webster v. Doe*, 486 U.S. 592 (1988) . .......... ......... ......... .......... ......... ......... 6

*Whitney v. Carter*, 628 Fed. App'x 446 (7th Cir. 2016).... .......... ......... ......... 12

*Wilson v. McConnell*, 501 F. Supp. 2d 545 (S.D.N.Y. 2007)....... .......... ......... 5

*Zeinali v. Raytheon Co.*, 636 F.3d 544 (9th Cir. 2011) ..... .......... ......... ......... 11

**Statutes and Rules:**

5 U.S.C. § 552 ...... .......... ......... ......... .......... ......... ......... .......... ......... ......... 5

10 C.F.R. § 710 .... .......... ......... ......... .......... ......... ......... .......... ......... ......... 3

18 U.S.C. app. 3 §§ 1-16. ......... ......... .......... ......... ......... .......... ......... ......... 4

50 U.S.C. § 1801 *et seq*... ......... ......... .......... ......... ......... .......... ......... ......... 5

# **GLOSSARY**

| | |
|---|---|
| Compass Rose | *Amicus Curiae* Compass Rose Legal Group, PLLC |
| HRP | Human Reliability Program |
| NSC | *Amicus Curiae* National Security Counselors, Inc. |
| Zaid | Appellee Mark Zaid |

<u>**AMICI CURIAE** BRIEF IN SUPPORT OF AFFIRMANCE</u>[1]

The law firms of National Security Counselors, Inc. ("NSC), Compass Rose Legal Group, PLLC ("Compass Rose"), and the Law Office of Daniel L. Ellis, PLLC (collectively "Amici") respectfully submit this *Amici Curiae* Brief in Support of Appellee. All parties have consented to the filing of this Brief.

<u>**SUMMARY OF ARGUMENT**</u>

The Government cites *Department of the Navy v. Egan*, 484 U.S. 518 (1988), to argue that President Trump's 22 March 2025 Presidential Memorandum revoking the security clearance of Appellee Mark Zaid ("Zaid") is a non-justiciable determination constitutionally reserved for the Executive Branch. *Egan*, however, does not serve as a categorical preclusion of all litigation involving national security, does not serve as a categorical preclusion of all *employment* litigation involving national security, and does not even serve as a categorical preclusion of all *security clearance determinations*.

Instead, *Egan*, as clarified by subsequent courts, including this one, is widely understood to only preclude judicial review of a certain subset of national security employment law matters which match multiple criteria. Based on a review of the

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4), undersigned counsel states that no party's counsel authored this Brief in whole or in part. Nor did any party or party's counsel, or any other person other than *amici curiae* or their counsel, contribute money that was intended to fund preparing or submitting this Brief.

case law applying and interpreting *Egan*, a six-part model can be constructed to explain the majority view. This Court should adopt this six-part framework and find that President Trump's arbitrary decision to revoke Zaid's security clearance fails the test, and that the District Court correctly declined to apply *Egan* to this case.

## ARGUMENT

## I.    *AMICI CURIAE*

Amici are law firms which regularly handle matters involving security clearances and are considered specialists in the field. They submit this Brief in support of Zaid to explain why the District Court was correct to reject the Government's contention that the Government's summary revocation of Zaid's security clearance was non-justiciable.

NSC was formed in 2009 and has, since that time, partially specialized in security clearance law. NSC has litigated numerous security clearance matters in both agencies and federal courts,[2] and the undersigned—NSC's Executive Director—has written extensively on the subject. *See, e.g.*, Kel McClanahan, *The*

---

[2] In fact, this Brief largely tracks the Amici Brief submitted by NSC to the Supreme Court in support of the certiorari petition in the case *Campbell v. McCarthy*, No. 20-435, *available at* https://www.supremecourt.gov/DocketPDF/20/20-435/159454/20201102235600117_2020-11-02%20-%20A%20-%20Amici%20brief.pdf.

*Case for Legislative Security Clearance Reform*, Just Security (Aug. 24, 2018), at

https://www.justsecurity.org/60440/case-legislative-security-clearance-reform/

(last accessed Mar. 26, 2026). He often serves as an analyst for various media

outlets on this topic and is an adjunct professor at the George Washington

University School of Law, where he covers this topic in his Law and Secrecy

course.

Compass Rose is a Washington, DC-based national security law firm

regularly handling matters involving security clearances. Andrew P. Bakaj is the

Founding and Managing Partner of the firm, having previously served with the

Department of Defense Office of Inspector General and the Central Intelligence

Agency Office of Inspector General. I. Charles McCullough III is Partner with the

firm, having previously served in the federal Government in positions including,

but not limited to, the first Presidentially Appointed and Senate Confirmed

Intelligence Community Inspector General, a Special Agent and Supervisory

Special Agent with the Federal Bureau of Investigation, and a Special Assistant

United States Attorney.

Daniel L. Ellis has represented individuals in Department of Energy Security

Clearance (access authorization) Hearings, Appeals, and Requests for

Reconsideration pursuant to 10 C.F.R. § 710 *et seq.* since 2009.

Amici's interest in this case is ensuring that the Court is presented with a thorough analysis of the esoteric and exceedingly nuanced case law and practice in this field so that it can rightly conclude that no Government official—even the President—can summarily revoke a security clearance on a whim unless specific conditions are met, which were decidedly not satisfied in this case.

## II. *EGAN* IS NOT A CATEGORICAL BAN ON JUDICIAL REVIEW OF ALL MATTERS TOUCHING NATIONAL SECURITY

In 1972, Justice Powell wrote for the Supreme Court:

> We cannot accept the Government's argument that internal security matters are too subtle and complex for judicial evaluation. Courts regularly deal with the most difficult issues of our society. There is no reason to believe that federal judges will be insensitive to or uncomprehending of the issues involved in domestic security cases.

*United States v. U.S. Dist. Court*, 407 U.S. 297, 320 (1972). *See also Baker v. Carr*, 369 U.S. 186, 211 (1962) ("[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."); *United States v. Amer. Tel. & Tel. Co.*, 567 F.2d 121, 128 (D.C. Cir. 1977) ("The executive would have it that the Constitution confers on the executive absolute discretion in the area of national security. This does not stand up."). Over the past four decades, the Judicial Branch has consistently proven up to the task of handling such matters, by, *inter alia*, regularly making decisions regarding the admission of classified evidence in criminal proceedings pursuant to the Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16, and making determinations about the

proper classification of information pursuant to the Freedom of Information Act, 5 U.S.C. § 552. An entire court exists for the review of classified search warrants and agency surveillance programs pursuant to the Foreign Intelligence Surveillance Act, 92 Stat. 1783, 50 U.S.C. § 1801 *et seq*. The idea that federal judges are not competent to review legal questions simply because "a party raises the specter of national security," *Natural Res. Def. Council v. Winter*, 527 F. Supp. 2d 1216, 1237 (C.D. Cal. 2008), is no longer tethered to the practical reality of federal litigation, if it ever was.[3]

However, despite the growing expertise of federal courts in national security matters, there has also been an increasing reliance on *Egan*'s "constitutional authority" language to assert exclusive Executive Branch authority over national security information in matters far removed from security clearance proceedings. *See, e.g., Fazaga v. FBI*, 965 F.3d 1015, 1077 (9th Cir. 2020) (Bumatay, J., dissenting) (FISA); *N.Y. Times v. CIA*, 965 F.3d 109, 122 (2d Cir. 2020) (FOIA prior official disclosure); *United States v. Fernandez*, 887 F.2d 465, 470 (4th Cir. 1989) (CIPA); *Wilson v. McConnell*, 501 F. Supp. 2d 545, 559 (S.D.N.Y. 2007)

---

[3] Federal courts—including this Court—have decided cases involving military and national security affairs for over two hundred years. *See, e.g., Bas v. Tingy*, 4 U.S. 37 (1800); *Talbot v. Seeman*, 5 U.S. 1 (1801); *Little v. Barreme*, 6 U.S. (2 Cr.) 169 (1804).

(prepublication review); *Rafeedie v. INS*, 688 F. Supp. 729, 750 (D.D.C. 1988) (immigration proceedings).

This trend is present in national security employment law cases as well; for example, *Egan*'s constitutional authority language has been cited to defend a court's holding that the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592 (1988), was limited to the Central Intelligence Agency and did not authorize constitutional claims about security clearance denials against any other agencies, *El-Ganayni v. DOE*, No. 08-881, 2008 U.S. Dist. LEXIS 88243, at *13-14 (W.D. Pa. Oct. 31, 2008), *aff'd* 591 F.3d 176 (3d Cir. 2010), and to defend another court's holding that "whistleblower protection laws passed by Congress do not alter the constitutional order, recognized in *Egan*, that gives the Executive Branch the responsibility to make national security determinations," *Teufel v. Dep't of the Army*, 608 F. App'x 705, 707 (10th Cir. 2015).

As one district court judge explained:

> To be clear, the government's argument that its actions are beyond the review of this Court rests on a theory of separation of powers that is not and has never been the law. The implications of the arguments put forth by the government in this case are stunning. The government argues here that any and all conflicts between national security interests and individual constitutional rights can not be resolved by the Article III courts because the Constitution commits the protection of national security to the Executive Branch. If this were the law, the Pentagon Papers case, *New York Times Co. v. United States*, which allowed the publication of classified material, was wrongly decided. If this were the law, *Snepp* [*v. United States*] and *McGehee* [*v. CIA*], which require judicial review of pre-publication classification decisions, were

wrongly decided. If this were the law, the provision of the Freedom of Information Act that allows judicial review of documents withheld for national security purposes would be unconstitutional. If this were the law, the provisions of the Classified Information [Procedures] Act that require disclosure of classified information to criminal defense counsel, would be unconstitutional. Finally, if the government's theory of separation of powers carried the day, *Youngstown Sheet & Tube Co. v. Sawyer* in [which] the Supreme Court held that the President unconstitutionally assumed the legislative power in the name of national security, was wrongly decided.

*Stillman v. DOD*, 209 F. Supp. 2d 185, 212-13 (D.D.C. 2002), *rev'd on other grounds sub nom. Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003).

## III.   *EGAN* IS NOT A CATEGORICAL BAN ON JUDICAL REVIEW OF ALL ADVERSE SECURITY CLEARANCE DETERMINATIONS

The Supreme Court stated in 1976 that "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). If *Egan* is held to deprive a person of the opportunity for independent judicial review of an adverse determination on the basis of the Executive Branch's constitutional authority, it is incumbent upon this Court to ensure that that preclusion is limited to situations presenting the thorny constitutional issues in play in that case.

The Government's arguments in the case below—and in other cases, *see generally* Louis Fisher, *Judicial Interpretations of Egan*, Law Library of Congress (2009), *available at* http://www.loufisher.org/docs/ep/466.pdf (last accessed Mar.

27, 2026)—in favor of a maximalist reading of *Egan* can best be understood as an attempt by the Executive Branch, to borrow a phrase from Justice Marshall, "to bootstrap itself into an area in which [the Court] has no jurisdiction." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990) (quoting *Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745 (1973)). It does so by implicitly, if not explicitly, relying on an extreme concept of "relatedness" which, when adopted, treats any case identically if it bears the slightest connection to national security: "life, like law, is 'a seamless web,' and all [national security issues] 'relate' to all others in some remote fashion." *Mass. v. HHS*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989) (paraphrasing Oliver W. Holmes, Jr., *The Common Law* 1 (1945)). This reading is fundamentally incompatible with both established case law and sound public policy, and yet it is a necessarily integral part of the Government's argument in this case.

In this case, the most relevant portion of *Egan* is the Court's holding that it would be generally inappropriate for an outside body to review a security clearance determination because such "predictive judgments . . . must be made by those with the necessary expertise in protecting classified information." 484 U.S. at 529. When coupled with the constitutional authority language, this statement clearly indicates a presumption by the Court that its ruling would only be cited to preclude review of cases involving predictive judgments made by officials with the

necessary expertise in protecting classified information. Currently seven Circuits—the Third, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits—adhere to this interpretation of *Egan*'s scope, while four Circuits—the Fourth, Seventh, Eleventh, and Federal[4] Circuits—have applied *Egan* to preclude judicial review of national security employment matters besides security clearance determinations and related issues.

The majority view is best exemplified by three cases from this Court and the Fifth Circuit—*Foote v. Moniz*, 751 F.3d 656 (D.C. Cir. 2014); *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012) ("*Rattigan II*"); and *Toy v. Holder*, 714 F.3d 881 (5th Cir. 2013). Using these three cases, a model can be constructed for the scope of the majority view, which this Court should formally adopt and apply to this case.

In *Foote*, this Court described *Egan* thusly: "The Court identified the President's Article II Commander in Chief authority—a 'constitutional investment of power in the President' that 'exists quite apart from any explicit congressional grant'—as a source of the Executive Branch's authority to control access to classified information." 751 F.3d at 658 (D.C. Cir. 2014) (quoting *Egan*, 484 U.S. at 527). This Court further clarified this interpretation in *Rattigan II*, in which it

---

[4] At least one Federal Circuit decision—*Dyer v. Dep't of the Air Force*, 971 F.3d 1377 (Fed. Cir. 2020)—does not follow this pattern and will be discussed as part of the majority view.

held that *Egan* does not shield decisions made by officials who "have neither the authority nor the training to make security clearance decisions." 689 F.3d at 767. Such decisions are "categorically unlike the predictive judgment made by appropriately trained adjudicative personnel who make security clearance decisions pursuant to delegated Executive authority and subject to established adjudicative guidelines." *Id.*

Relatedly, in *Toy*, the Department of Justice attempted to use *Egan* to shield a decision to revoke a contractor's building access. 714 F.3d at 885-86. The Fifth Circuit held:

> Security clearances are different from building access; security-clearance decisions are made by specialized groups of persons, charged with guarding access to secured information, who must make repeated decisions. There is also significant process involved in granting security clearances, the kind of process that allows agencies to make the deliberate, predictive judgments in which they specialize.
>
> That is not the case, as aptly demonstrated here, where building access is concerned. Building access may be revoked, as in this case, by a supervisor, someone who does not specialize in making security decisions. An FBI security clearance, on the other hand, may be granted or revoked only by the FBI's Security Division, a group that specializes in making security-clearance decisions and to which authority to make those decisions is explicitly delegated by the director. A lack of oversight, process, and considered decision-making separates this case from *Egan*, which therefore does not bar Toy's suit.

*Id.*

Using these three cases, one can develop a reliable model of the majority view. According to that model, in order for *Egan* to apply:

1. The authority for the decision must be the President's Article II Commander in Chief authority;

2. The decision must pertain to controlling access to classified information;

3. The decision must be made by officials with the authority and training to make security clearance decisions;

4. The decision must be subject to established adjudicative guidelines;

5. The decision must involve a significant process; and

6. The decision must be subject to oversight.

This model fits a significant majority of the Circuit cases adopting the majority view, of which a representative sample are discussed here:

- *Makky v. Chertoff*, 541 F.3d 205 (3d Cir. 2008): A decision to suspend an employee without pay rather than reassigning him did not, *inter alia*, pertain to controlling access to classified information, and therefore *Egan* did not apply.

- *Hale v. Johnson*, 845 F.3d 224 (6th Cir. 2016): A decision to terminate an employee for failing to pass a physical examination did not, *inter alia*, pertain to controlling access to classified information, and therefore *Egan* did not apply.

- *Dubuque v. Boeing Co.*, 917 F.3d 666 (8th Cir. 2019): A private contractor's termination of an employee while a clearance investigation was pending did not, *inter alia*, stem from a delegation of the President's Article II Commander in Chief authority.

- *Zeinali v. Raytheon Co.*, 636 F.3d 544 (9th Cir. 2011): Same as *Dubuque*.

- *Sanchez v. DOE*, 870 F.3d 1185 (10th Cir. 2017): A refusal to offer a reasonable accommodation under the Rehabilitation Act did not, *inter alia*, pertain to controlling access to classified information, and therefore *Egan* did not apply.[5]

- *Rattigan II*: The act of knowingly providing false information to a security officer about an employee did not trigger *Egan* protection because, *inter alia*, the decision was not made by someone with the authority or the training to make security clearance decisions.

- *Dyer v. Dep't of the Air Force*, 971 F.3d 1377 (Fed. Cir. 2020): A decision to terminate an employee because he was no longer a

---

[5] Of note, the court in *Sanchez* found that it would have been barred from reviewing the merits of the denial of his Human Reliability Program ("HRP") certification, following *Foote* in determining that there were enough similarities between that certification and a security clearance to warrant *Egan* preclusion. *Id.* at 1193 (citing *Foote*, 751 F.3d at 658-59).

member of the military did not, *inter alia*, pertain to controlling access to classified information, and therefore *Egan* did not apply.

In contrast, most if not all of the court decisions adopting the minority view do not fit within this model for one or more reasons:

- *Campbell v. McCarthy*, 952 F.3d 193 (4th Cir. 2020): A decision not to provide an employee with unclassified duties made by an official with neither the authority nor the training to make security clearance decisions was still held to be protected by *Egan*.

- *Whitney v. Carter*, 628 Fed. App'x 446 (7th Cir. 2016): Termination from a "sensitive" position with no access to classified information was considered the same as losing a security clearance, triggering *Egan* protection.

- *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003): The initiation of disciplinary proceedings based on false and discriminatory charges was still held to be protected by *Egan*.

- *Kaplan v. Conyers*, 733 F.3d 1148 (Fed. Cir. 2013): Same as *Whitney*.

Contrary to what the Government might argue, this Court's decision in *Lee v. Garland* does not invalidate the above framework for the majority view; it in fact supports it. In that case, this Court held:

> Adjudicating constitutional challenges to clearance decisions often would present such unmanageable questions. Clearance decisions

13

involve an assessment of intangible qualities such as "loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment." And they involve "predictive judgment" about whether individuals are likely to divulge sensitive information "under compulsion of circumstances or for other reasons," which is "an inexact science at best."

120 F.4th 880, 893 (D.C. Cir. 2024). This Court's stated rationale—that such an "assessment of intangible qualities" involves "predictive judgment . . . , which is an inexact science at best"—is the precise reason that the majority model includes the third criterion: The decision must be made by officials with the authority and training to make security clearance decisions.

## IV. THIS CASE DOES NOT FIT INTO THE MAJORITY MODEL, AND THEREFORE *EGAN* DOES NOT APPLY

Now that the majority model has been described, its application to this case proves fatal to the Government's argument that *Egan* compels reversal of the District Court's decision.

It is undeniable that the authority for President Trump's decision was the President's Article II Commander in Chief authority and that the decision pertained to controlling access to classified information, so those two criteria support the Government.

Similarly, Amici stipulate that the criterion that the decision must be subject to oversight supports neither party. President Trump summarily revoked Zaid's security clearance after engaging in *no* process—let alone "considered decision-

14

making," *Toy*, 714 F.3d at 885-86—and the Government provided him no avenue to appeal the adverse determination. However, while this is a determinative consideration in the context of another criterion discussed below, Amici concede that no other entity would be able to constitutionally exercise "oversight" over the President.

However, the Government's argument falters when one attempts to apply the remaining three criteria. First and foremost, the decision must be made by officials with the authority and training to make security clearance decisions. This criterion clearly supports Zaid. While President Trump undeniably has the *authority* to make security clearance decisions, he equally undeniably is not an "appropriately trained adjudicative [official] who make[s] security clearance decisions pursuant to . . . Executive authority." *Rattigan II*, 689 F.3d at 767. *Rattigan II* requires *both*. This is not to say that a President could never revoke a security clearance, but he cannot do so without even a *hint* that he conducted an "assessment of intangible qualities" or was assisted by a subject matter expert. That is the absolute least that "considered decision-making," *Toy*, 714 F.3d at 885-86, requires.

For a different reason, the criterion that the decision must be subject to established adjudicative guidelines also supports Zaid. President Trump summarily revoked his security clearance by fiat without any application of *any* adjudicative guidelines, and the Government argues that adjudicative guidelines are not even

necessary, which is squarely foreclosed by *Rattigan II. See id.* (requiring

"predictive judgment made by appropriately trained adjudicative personnel who

make security clearance decisions pursuant to . . . Executive authority *and subject

to established adjudicative guidelines*") (emphasis added).

Lastly, the criterion that the decision must involve a significant process also

supports Zaid. There was, simply put, no process. As stated above, President

Trump summarily revoked Zaid's security clearance, and the Government

provided him no avenue to appeal the adverse determination. Accordingly, while

this fact is not excluded as it was in the context of the "oversight" criterion, it

clearly indicates that the Government's argument founders here.

In the final analysis, the Government's argument in this case only fits into

the majority model insofar as the decision was made pursuant to constitutional

Article II authority and pertained to access to classified information. While one of

the criteria is inapplicable due to the particular constitutional issues created by the

President being the decisionmaker, the remaining three criteria squarely

demonstrate that this case is not of the type that the Supreme Court intended to be

encompassed by *Egan*.

**<u>CONCLUSION</u>**

For the reasons provided above, the Government has no legal basis to prevail

in this suit, and the Court should accordingly affirm the District Court's decision.

16

Date: March 27, 2026

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD  20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing filing contains 3811 words, and was prepared in 14-point Times New Roman font using Microsoft Word 365.

Date: March 27, 2026

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
*Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that, on 27 March 2026, I served the foregoing document on all counsel of record by filing it using this Court's CM/ECF system.

Date: March 27, 2026

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
*Counsel for* Amici Curiae